30533.   FULTON COUNTY *et al. v.* HOLLAND.

DECIDED JULY 14, 1944.   REHEARING DENIED JULY 25, 1944.

*E. H. Sheats, W. S. Northcutt,* for plaintiffs in error.

*G. S. Peck, C. O. Johnson, Alston, Foster,. Sibley & Miller,* contra.

PARKER, J.   The exception is to the final judgment of the superior court awarding to Guy N. Holland, hereinafter referred to as the claimant, the total monthly retirement pension benefits of $76.25, claimed by him upon a basis of thirty years of service as an employee of Fulton County, which judgment sustained a certiorari, and reversed the action of the Fulton County pension board denying the grant of a pension.   The plaintiffs in error are the county and its several commissioners, and they will be referred to hereinafter as the county.

There is no dispute as to the number of years that the claimant performed services from which the county derived a benefit, nor is there any dispute as to the calculations determining the amounts of the benefits claimed.   The county denies that the claimant was an employee of the county for the greater part of the thirty years served by him as stated, and denies that he was an employee of the county on March 20, 1943, when the last act of the General Assembly amending the Fulton County pension acts became effective.   See Ga. L. 1943, p. 995.   The county further contests as a separate issue the demand by the claimant for credit for his service as a deputy to a former clerk of the superior court while the fee system was in effect in the county, asserting that he was not entitled to that credit because the authority for such credit was first provided by the act of 1943 (section 16), and that the claimant was not an employee of the county on the effective date of the act, and could not avail himself of such service credit.   It appears

that the claimant's alleged service of thirty years was rendered by him in the following sequence: December, 1912, through December, 1916, as an assistant to Mr. Harvey Hatcher in the preparation of supplemental indexes to the public records of the county; from January 1, 1917, through December, 1924, as a deputy to the clerk of the superior court serving under the fee system; from January 1, 1925, through June, 1933, as a deputy to the clerk of the superior court serving under the salary system; and again from July 1, 1933, and continuing thereafter for the term of his employment as an assistant indexer under Mr. Hatcher. The claimant's last day of actual work on the index records was February 17, 1943, which was before the approval date of the amendatory act of 1943. The act of 1943 contained a provision (section 11) adding a new section—section 20—to the original act, granting to the "present employees of the county," including those not directly under the control of the county commissioners, not having previously elected to obtain the benefits of the pension plan, the right to so elect within sixty days from the passage of the amending act, by giving written notice to the clerk of the county commissioners, and by paying into the pension fund such sum of money as would equalize the contribution with that of other employees similarly situated with respect to salary and length of service, together with an additional sum equal to 3½ per cent. thereon to the date of election. No deductions for the pension fund had ever been made from the claimant's compensation, and no contributions thereto were made by him until ninety-one days from the last day he actually worked and sixty days from the approval of the act of 1943. On May 13, 1943, the claimant filed with the clerk of the county commissioners written notice of his election to qualify under the act of 1943, and on May 19, 1943, he paid $124.37 into the pension fund. There appears to be no dispute over the correctness of the payment with respect to the total benefits claimed. On August 26, 1943, he filed his application for a pension, and in his application alleged his age as 67, his service as thirty years, and his wages, or salary, as $137.50 per month, and that his health was totally and permanently impaired. If the claimant was an employee of the county during the fifteen years he worked with Mr. Hatcher, and during the fifteen years he worked as a deputy clerk, and if his belated election to ob-

tain the pension benefits was effective, he is entitled to a retirement pension, since the statutes stipulate a service of twenty-five years, or more, and an age of 55, as requisites for retirement bene-fits. Ga. L. 1943, p. 995, sec. 4(a). But if his length of service is limited to the twenty-two years exclusive of his service as a deputy to a fee officer, he would be limited to a disability pension only, the latter being available for those with service of fifteen years or more, and his maximum benefits under it would be $61 per month. Id. Sec. 4(b). In making his application the claimant complied with the formal requirements for both the retirement and the disability benefits. Other facts will appear in connection with our discussions and rulings contained in this opinion.

■ While the evidence does not show that the claimant possessed all of the usual attributes of a county employee, it indicates to us that his status is nearer like that of an employee of the county than an employee of a contractor with the county. It will be noted in the first place that the General Assembly authorized counties with a population of 75,000 to adopt for use by the clerk of the superior court, such system of indexing for records of deeds and mortgages (other than as then provided by law) as would appear most desirable to them, and provided that the expense of complying with such a system should be paid out of the county treasury as one of the *expenses of the superior court of said county.* Ga. L. 1907, pp. 109, 110. The work of installing and maintaining such a new system of indexing was begun, and for a time continued, by a regular deputy clerk of the superior court. The legislative act did not expressly empower the county to contract for the installation of the system. It authorized an *adoption* of a system that would be *complied with* by the clerk of the superior court, anticipating an expense in connection with such compliance, which expense was to be paid out of the county treasury. No written contract has ever been entered into between the county and Mr. Hatcher, who has supervised the work since 1908. It is true that there are several entries on the minutes of the board of commissioners relative to this indexing work, but the Code, § 23-1701, provides that all contracts in behalf of the county must be in writing and entered on the minutes. An entry on the minutes alone is not sufficient. *Murray County* v. *Pickering,* 42 *Ga. App.* 739 (157 S. E. 343); *Spalding County* v. *Chamberlain,* 130 *Ga.* 649 (61 S. E. 533); *Walker* v. *Stephens,* 175 *Ga.* 405 (165 S. E. 99).

It was held in *Henry* v. *Means,* 137 *Ga.* 153 (72 S. E. 1021), that county commissioners had no authority to employ, at the expense of the county, an unofficial person to make a copy of certain deed books. While that case did not deal with a county affected by the act of 1907, authorizing the adoption of a different index system, it took into account the fact that the general laws empower the clerks of the superior courts to maintain and replace index books. Under the general laws upon which the decision cited was predicated three things are required: an adoption of a "standard" system, a bearing of the expense by the county, and a compliance by the clerk. It would seem, therefore, that the only effect of the act of 1907 was to permit an affected county officially to adopt and maintain an additional system, and thus the ruling in *Henry* v. *Means,* supra, would seem to apply to Fulton County, and to this case, in so far as the power to contract is involved. If a contract for the indexing work is ultra vires and illegal, then the system would necessarily have to be installed and maintained by county officers, deputies, or official employees. There is no evidence that would classify the claimant, while he was engaged as an indexer, as an officer or a deputy in the usually accepted definitions of the terms. His duties were entirely clerical and routine. There was no necessity for an oath or a bond. From an examination of the various statutes pertaining to public servants, it appears that the taking of an oath and the giving of a bond are regarded as special rather than general requirements. It seems that all officers and most deputies are expressly required to take oaths. Bonds are required of some officers and of some deputies, but not from all of them. As to servants or employees who are not officers or deputies, we find no general requirements prerequisite for either.

Other indications of a county-employee relation between the parties are that the hourly rate of pay of both the supervisor and the subordinates of the indexing staff were fixed and controlled by the county commissioners; and the supervisor was not given a blanket sum to be disbursed as he saw fit with an opportunity for him to make a profit; and he could not pay himself any more than the commissioners authorized, and could not pay his assistants any less than the rates stipulated for them. Such conditions and the degree of control exercised by the county officials over the work and

the workers are entirely antagonistic to a relation of independent contractor. The several excerpts from the minutes of the commissioners tend to lean toward a recognition of Hatcher as an employee of the county in serving as the supervisor of the indexing work, and not as a contractor to furnish the service. If Hatcher be an employee and not an independent contractor, it would seem to follow that his assistants engaged by him, including the claimant, would likewise be employees of the county. While the clerk of the commissioners testified that he and the commissioners did not regard the indexing staff as county employees, he seems to have indicated an employee relationship by his testimony concerning the "pay roll" sent in by Mr. Hatcher showing the "employee's" name, and the number of hours he worked, and the amount of time due him or "the amount the *county* is due him." (Italics ours.) Apparently an actual conception unknowingly penetrated the veil of official interpretation. Though the evidence indicates that the supervisor of the indexing work was given a free hand in the selection and management of his staff and work, we do not feel that this fact is a conclusive argument against a relation of county employee.

Since we have pointed out the elements of the evidence that tend to support a county-employee relation, and in view of our statement that the evidence does not cloak the claimant with all of the usual attributes of a public employee, it is proper that we discuss the characteristics that are lacking. We have already referred to the absence of an oath and a bond, and do not feel that a repetition is necessary. The same is true as to the supervisor's latitude in choosing, retaining, and discharging his workers; and the testimony of the clerk of the commissioners to the effect that the claimant was considered as Mr. Hatcher's employee. It appears that no deductions for the pension fund were made from the payments made by the county to the claimant during the course of his employment while the pension plan was in effect, and the county contends that this fact indicates that the claimant was the employee of Mr. Hatcher. His failure to protest and call the matter to the attention of the proper authorities is a circumstance to be considered in determining whether or not he and the authorities considered him a county employee, but it is not conclusive on the question presented and does not preclude a finding that he was an

employee of the county. The county claims that the letter from Mr. Hatcher to a former commissioner, which is in evidence, shows conclusively that the county contracted with him to furnish the work. Aside from our conclusion that the county was without authority to make such a contract, we feel that the letter is easily reconcilable with a finding that Hatcher and his staff are county employees. He was speaking in common parlance in relating to the commissioners his estimates of what the various projects would cost. There is nothing in the letter to warrant an interpretation that it was a bid. The language of the letter, not being conclusive in its nature, must be interpreted in the light of all of the other evidence, especially the circumstances transpiring before it was written. In view of the evidence, the letter is nothing more than a report on work previously done, the expense thereof, and an expression of estimates for the cost of other work under contemplation, meaning by cost, the amount that would have to be paid at the prevailing rate to a sufficient number of workers to perform the task in a fixed period. The estimates in the letter are flexible and not definite, and could not be the basis for a bid if the letter otherwise manifested an intention on Hatcher's part to procure a contract with the county. The county further contends that Mr. Hatcher rendered "bills" by the month covering the services performed by him and his staff, and that this act, coupled with the county's paying the items indicated a contractual relation with Hatcher. The county maintains that its direct payment to the individual indexers was a matter of convenience. Calling the time report a "bill" does not make it so, and the direct-compensation practice is indicative of the county-employee relation. This practice was applied to the workers under Mr. Hatcher about two years after the county began to pay most of its other employees directly rather than through the department heads. As a matter of fact, if Hatcher is a contractor, it would be considerably more convenient to make him a lump-sum payment and permit him to disburse it among his workers, for then the county would carry only one item on its books, whereas in its paying each worker individually, it has to carry several items. This proven practice of paying the employees directly is repugnant to the theory of a contract with Hatcher. The fact that the indexing workers cease work when their monthly budget allotment is consumed is not of itself

a manifestation that they work under a contractual relation between the county and Hatcher. Even though the personnel is paid by the hour, if one of them devotes his usual time each month, his monthly pay is standardized, and it makes no difference whether the time is worked in such a way as to exhaust the allotment before the end of the month, or is spread out over the entire month. Another argument urged by the county is that the commissioners and other appropriate authorities charged with the county government exercised no control or surveillance over attendance upon duties and absences due to illness and other causes upon the part of the indexing workers. This is not a serious objection, for, as indicated, the work could be spread out over the month, and where lost time was not made up, the same was reflected in the monthly time reports rendered by the supervisor, and no payment was made except upon time actually worked. Thus it is seen that the county authorities did in fact exercise a measure of control and were kept informed of the activities.

The county invokes the doctrine of administrative interpretation as support for its contention that the claimant was not a county employee. We recognize that doctrine, and have given careful consideration to the authorities cited in support of it. See *Wellborn* v. *Estes,* 70 *Ga.* 390, 398-400; *Howell* v. *State,* 71 *Ga.* 224, 229 (51 Am. R. 259); Davis *v.* Manry, 266 U. S. 401 (45 Sup. Ct. 163, 69 L. ed. 350); and Georgia Assn. of Physicians & Surgeons *v.* Allen, 112 Fed. 2d, 52. While the interpretations and practices of departments and officials of government are entitled to and do receive weight in passing upon the constitutionality, validity, or meaning of a statute or rule, the supporting actions of the governmental authorities are nothing more than circumstances to be considered, and they are not in any sense conclusive. *Elder* v. *Home Building &c. Assn.,* 188 *Ga.* 113 (2) (3 S. E. 2d, 75, 122 A. L. R. 738); *Suttles* v. *Northwestern Mutual Life Ins. Co.,* 193 *Ga.* 495, 515 (19 S. E. 2d, 396, 143 A. L. R. 343), and cit.

■ The contention and argument against the claimant's having been a county employee on the effective date of the act of 1943 are principally directed by counsel for the county to the issue regarding credit for service as a fee-system deputy. But it is necessary to find the claimant to have been an employee on the effective date of

the act of 1943 in order to sustain an award to him of any pension benefits. That act furnished for the first time a provision affording a *belated* election to obtain the pension benefits, and that provision was supplied by section 11 adding to the original act (1939) as amended a new section (section 20), providing that *"present* (italics ours) employees of said county . . who have not previously elected to obtain the benefits of this act [the original act as amended] may, within a period of sixty days from the passage of this act [phraseology incorrect, but the second use of the words 'this act' obviously means the amendatory act rather than the act or acts being amended] elect to obtain the benefits thereof by giving written notice . . and by paying to the treasurer of Fulton County for credit to the pension fund," etc. It will be noted that the new provision was applicable to *present employees.* Since the claimant had not previously been covered by the pension plan, in order for his election and contribution to entitle him to any benefits, he must have been a present employee of the county when the act of 1943 went into effect. Consequently, though we have ruled that the claimant was a regular county employee during the periods he was engaged as an indexer, we must go further at this point and decide whether he was still employed by the county when the act of 1943 became effective. "It is a general rule that pension statutes are to be liberally construed." 40 Am. Jur. 962, § 4; Holton *v.* Tampa, 119 Fla. 556 (159 So. 292, 98 A. L. R. 501). Under this general rule the courts have adopted a generous and liberal attitude in construing various bonus and pension statutes. Placing a liberal construction upon the belated election provision of the act of 1943, we are of the opinion that a "present employee" would include any otherwise eligible employee who had not officially, finally, and definitely terminated his connection with the county, and that there was no legislative intention to limit the term to those actually at their posts and working on the effective date of the amendatory act. The evidence shows that the claimant could return to work at any time he might be able to do so. Assuming, but not deciding, that the claimant lost his status later by not applying for and obtaining sick leave, the evidence shows that the practice promulgated by the county commissioners allowed an employee to remain off duty because of illness for a sixty-day period before it became necessary to obtain sick leave. The claim-

ant worked his last day on February 17, 1943, and the act of 1943 was approved on March 20, 1943. It will be seen that from the last day of his working to the approval date of the act sixty days had not elapsed. But the county claims that he should not have the benefit of the sixty-day off-duty period because he did not claim wages for the time he was off; nor was he paid anything therefor. In the light of the other evidence, there is no merit in such a contention. It was clearly shown that the indexing workers were never paid except for time actually spent by them at their work, and to have paid the claimant during the sixty-day period would have been inconsistent with that established practice. Besides, we could not condone the imposition of a penalty upon him for not seeking to obtain from the county remuneration for time he did not work. It is rather more commendable that he made no such effort. The testimony of the clerk of the commissioners was that he required an absentee to furnish him with a physician's certificate before the county would pay the absentee. There is no evidence that such a certificate was required where no wages or salary were claimed. We therefore rule that the claimant was a "present employee" when the act of 1943 went into effect, and that his formal election made within the stipulated period entitled him to the benefits commensurate with his length of service and rate of earnings.

█ The only specific attack that the county makes upon the employee's claim for credit for his service as a deputy clerk under a fee-system officer is the contention that the claimant was not an employee of the county when the act of 1943 affording such a credit went into effect. Since we have already considered the issue as to his status as of the effective date of the act of 1943 and have ruled that he was a "present employee" on that date, the county's objection to his credit for service as a fee-system deputy is fully answered. However, it might be well to point out that the provision (section 16) of the act relative to credit for service under a fee officer might inure to the benefit of one not a county employee on the effective date of the 1943 statute, provided the basic right to the pension did not depend solely upon the last act. The said provision stipulated that the service under a fee officer should be counted as a part of "the number of years of service of any person on which any pension right under this act

[*act being amended including prior amendments*] depends." Any claimant satisfying the terms of the provision with regard to his status and rights for pension benefits and whose application for benefits followed the act of 1943 would be entitled to the credit the new provision afforded.

There being no material dispute as to the facts, the superior court did not err in sustaining the certiorari and in entering a final judgment in favor of the claimant for the maximum benefits claimed by him and certified to by the county auditor.

*Judgment affirmed. Sutton, P. J., and Felton, J., concur.*