Major John C. FAIRBANK, Appellant,

v.

James R. SCHLESINGER, Secretary of Defense, et al.

Major William R. PERRY, Appellant,

v.

COMMANDING OFFICER, HEADQUARTERS, et al.

Nos. 73–2136, 74–1287.*

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 4, 1975.

Decided Dec. 30, 1975.

---

* Although 73–2136 and 74–1287 were argued together, only 73–2136, *Fairbank v. Schlesinger,* is being decided in this opinion.

Jon G. Rothblatt, New York City, with whom Robert M. Price, Washington, D. C., was on the brief for appellant Fairbank.

David A. Jones, Washington, D. C., for appellant Perry.

David R. Addis, Richard A. Graham, Asst. U. S. Attys., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Michael A. Katz and Royce C. Lamberth, Asst. U. S. Attys., were on the brief for appellees.

Before TAMM, ROBINSON and Mac-KINNON, Circuit Judges.

MacKINNON, Circuit Judge:

Appellant originally enlisted in the Regular Army on September 8, 1953, for a period of three years. During this enlistment he applied to go to Officer Candidate School, which he completed satisfactorily on March 7, 1955, at which time he was discharged from active duty service as Sergeant E–5 in the Regular Army to accept appointment as a Reserve commissioned officer of the Army (A–46). Appellant thereupon applied and agreed to serve for two years on active duty as a Reserve officer, and, on March 31, 1957, upon completion of that two-year service, he was voluntarily released from active duty.

Beginning the next day, April 1, 1957, and continuing until October 17, 1961, appellant was not on active duty but served this entire period as a Reserve officer in the United States Army Reserve (the active reserve). During this period of active Reserve service he was promoted from First Lieutenant to Captain, and, with his consent, appellant was ordered back to active duty in the Army as a Reserve officer with the rank of Captain on October 18, 1961. Since that date appellant has served without interruption in the Army on active duty as a Reserve officer, and has been promoted to the rank of Major in that branch.

On June 8, 1973, appellant received a letter from the Department of the Army notifying him that due to officer strength reductions he was to be involuntarily released from active duty within 90 days. The letter stated:

1. Recent actions related to authorization limitations have compelled the United States Army to reduce the active duty officer strength. To accomplish this reduction, the Department of the Army instituted board action under the provisions of paragraph 3–58b, Section XV, AR 635–100, (Personnel Separations), to select officers for involuntary relief from active duty. After a comprehensive and impartial review of your official military personnel records, to include efficiency ratings, civilian and military schooling, commendations, types and variety of assignments and future potential, the Department of the Army Active Duty Board has selected you for release from active duty.

2. Selection for release from active duty is meant in no way to reflect unfavorably upon performance of duty. You have served faithfully and well during a difficult and demanding time in our nation's history. The necessity to release you is dictated solely by the needs of the service and is sincerely regretted.[1]

At the time appellant received the above letter he had completed approximately 15

---

1. Letter from Major General Sidney B. Berry, U.S. Army Military Personnel Center, to Major John C. Fairbank, May 31, 1973.

years and two months of active duty service in the Army, including two tours of duty in hostile areas. To qualify for retirement with full benefits, appellant was required to complete an additional four years and eight months of active duty service. Appellant contends that these benefits would be worth over $300,000 to him, his wife, and four children. We have no evaluation of the worth of his present benefits. Presumably they are less.

On July 25, 1973, in accordance with conditions and procedures specified in Army Regulations (A–20), and a Department of the Army message dated July 9, 1973,[2] appellant applied for reenlistment as an enlisted member of the Regular Army, to take effect upon his involuntary release from officer service (A–23). This application was based upon the belief that he had a statutory right to continue his service until he became eligible for retirement by reenlisting in the Regular Army, in his former enlisted grade, and thus obtain credit for all prior service by virtue of having left his former Regular Army enlisted grade to serve as an officer at a time when the Army needed additional officers.

Appellant's application for reenlistment was supported by several letters of recommendation from Army officers and from a Sergeant Major (A–33), and there is no contention that appellant does not completely satisfy the needs of the service for the grade in which he seeks reenlistment. His application included a letter from his Commanding Officer, recommending acceptance for reenlistment in the grade of Sergeant First Class E–7 (A–21).

On August 24, 1973 the Department of the Army informed appellant that he was not eligible for reenlistment in the Regular Army in any enlisted grade, and that his application for reenlistment was denied (A–34). The official denial of appellant's reenlistment application did not indicate any reason as to why he did not have a statutory entitlement to reenlist pursuant to the relevant statute (A–34), but appellant states that he was subsequently informed that the Department contended he was ineligible due to the break in his active duty service from 1957 to 1961, during which period he had served on inactive duty as an officer in the Army Reserve. (Appellant Br. 9).

2. The message [from the Department of the Army for general dissemination throughout the Army, July 9, 1973] reads:

\* \* \* \* \* \*

Subject: Reenlistment/Enlistment of Commissioned and Warrant Officers Notified of Release from Active Duty

\* \* \* \* \* \*

The purpose of this message is to confirm the conditions and procedures under which commissioned and warrant officer selected for release from active duty may reenlist/enlist in the Regular Army:

The Army throught [sic] the qualitative management program and strengthened reenlistment eligibility criteria has continually improved the quality of the enlisted force. To prevent promotion inequities as the Army is phasing down in strength and to preclude involuntary separations of enlisted personnel in order to make room for former officers, it is necessary that authority to apply for reenlistment be limited to those with a statutory entitlement and certain exceptional cases as specified below:

By statute, any former Regular Army enlisted member who has been separated from his Regular Army enlisted status for the purpose of immediately accepting appointment as a reserve (or AUS) officer on active duty is entitled to be reenlisted in the Regular Army upon release from officer status: similar statutory provisions do not exist for Regular Army commissioned and warrant officers or for officers who have not had previous Regular Army enlisted service:

4: It is for these reasons that authority to apply for reenlistment/enlistment is limited to commissioned or warrant officers being released from the active Army who:

A: Were separated as a Regular Army enlisted member for the purpose of immediately entering on active duty as an Army reserve commissioned or warrant officer.

B: Were separated as a regular member from another service for the purpose of immediately entering on active duty as an Army Reserve commissioned or warrant officer, and is being rel as a RES or AUS commissioned or warrant officer.

C: Were the recipients of the Medal of Honor, the Distinguished Service Cross, the Silver Star, or an equivalent medal awarded by one of the other Armed Forces.

\* \* \* \* \* \*

Upon exhaustion of review procedures available within the Army, appellant brought the instant action in the district court to contest the denial by the Department of the Army of his application for reenlistment, and when that court granted summary judgment dismissing his action, he appealed to this court.

On November 6, 1973, appellant filed a motion in this Court pursuant to Rule 8(a), Fed.R.App.P., for an order staying his release from duty in the Army pending this appeal and for summary reversal. On November 8 we granted the motion for stay pending appeal and denied the motion for summary reversal.

We find that appellant has a statutory right to reenlist.

## I. The Contentions

Appellant claims his right to reenlist in the Regular Army was conferred by the following statute:

Any former enlisted member of the Regular Army who has served on active duty as a Reserve officer of the Army, or who was discharged as an enlisted mem-

ber to accept a temporary appointment as an officer of the Army, is entitled to be reenlisted in the Regular Army in the enlisted grade that he held before his service as an officer, without loss of seniority or credit for service, regardless of the existence of a vacancy in his grade or of a physical disability incurred or having its inception in line of duty, if (1) his service as an officer is terminated by an honorable discharge or he is relieved from active duty for a purpose other than to await appellate review of a sentence that includes dismissal or dishonorable discharge, and (2) he applies for reenlistment within six months (or such other period as the Secretary of the Army prescribes for exceptional circumstances) after termination of that service. However, if his service as an officer terminated by a general discharge, he may, under regulations to be prescribed by the Secretary of the Army, be so reenlisted.

10 U.S.C. § 3258.[3] The Secretaries of Defense and of the Army admit that appellant would have the reenlistment right he asserts except for his failure to exercise such right when he was released from active

**3.** Two cases have interpreted this statute, but neither examines the issues of hiatus in active duty as a reserve officer and of the expiration of a prior six-month period that are raised by appellant. The first case is *Frazier v. Froehlke* (W.D.La., May 25, 1973). Frazier enlisted in the Regular Army on June 27, 1950 for a term of three years. On July 1, 1953 he was discharged under honorable conditions because his term of service had expired. For the four years thereafter he attended Southern University, where he participated in the reserve officer training course. In June of 1957 he graduated and received a Reserve commission in the United States Army. He entered active duty on September 22, 1957 as a Second Lieutenant and remained in that status until 1972. The court held that he had a statutory entitlement to reenlist because, although his officer service after leaving regular enlisted status was not immediate, he met the plain language of the statute.

The second case is *Glemaker v. Schlesinger,* (M.D.Ga., Aug. 6, 1973). Glemaker was serving as a member of the enlisted reserve (not the Regular Army) when he was discharged on January 12, 1967 for the purpose of accepting a commission as a reserve officer on active duty with the Army. He had previously served two

terms as an enlisted member of the Regular Army from 1953 to 1957 and from 1959 to 1963. He held no military status after his discharge from the Regular Army in 1963 until he enlisted in the U. S. Army Reserve in 1964. In 1966 he applied for admission to Officer Candidate School, was accepted and was ordered, with his consent, to active duty as a member of the enlisted reserve to attend the school. Upon graduation in 1967 he was discharged from his status as an enlisted reservist and commissioned as a Second Lieutenant in the Army Reserve. He has served on active duty continuously as a reserve officer since his commission in 1967. He was notified in 1972 that due to a reduction in the strength of the Army he had been selected for release from active duty. Upon his release he was to retain his Reserve commission. He simply was not to be retained on active duty. He contended that he had rights to reenlist under § 3258 in his former enlisted rank. The court denied Glemaker's claim, holding that "there is a statutory right to reenlist only for an officer who has been separated from his Regular Army enlisted status for the purpose of immediately accepting appointment as an officer on active duty." Opinion at 14.

duty in the Regular Army from April 1, 1957 to October 17, 1961. In other words, the Secretaries admit in this case that appellant had a right under § 3258 to reenlist when he was released from active duty on March 31, 1957, but they contend that since he did not apply "for reenlistment within six months . . . after termination of *that* service" he forever lost the right. To the contrary, appellant argues that his "reserve commission, and his *service* as a Reserve commissioned officer, have *never* terminated," since following his 1957 release he retained his Reserve commission and continued as a member of the Active Army Reserve without interruption until his return to active duty with the Regular Army in 1961, and, therefore, "the six month application period specified in 10 U.S.C. § 3258 has never commenced to run." (Appellant Br. 32).

## II. The Statutory Background

The resolution of these conflicting contentions must depend upon the manifestations of Congressional intent which appear in the statute, committee reports and Congressional debates relating to the relevant legislation. We thus turn to such sources to determine whether Congress intended to limit the reenlistment rights of eligible Reserve Officers to the first occasion of release from active duty to the Active Reserve or forever to forfeit such right.

**4.** The Act provided:
> *Provided further,* That the enlisted men who were discharged from the Army to accept a commission in the National Guard, or in any volunteer force that may be authorized in the future, at the call of the President, June eighteenth, nineteen hundred and sixteen, be restored to their original status upon reenlisting in the Regular Army: *Provided,* That they reenlist within three months from date of muster out of the United States Service, and that in computing service for retirement and continuous service pay, service as an officer in the National Guard, or in any volunteer force that may be authorized in the future, while in the service of the United States, be counted.
>
> *Provided further,* That hereafter any enlisted man of the Army who shall be discharged to enable him to accept a commission in the Officers' Reserve Corps, or in any National Guard or militia organization, or in any vol-

## A. *The 1917 and 1918 Enactments.*

The legislative history discussed in detail in appellee's brief begins with the Act of 1918, but the earlier Act of May 12, 1917 was the first to make provision for the reenlistment in the Army of enlisted men who were discharged to accept commissions as officers. It granted, in an appropriation act, a reenlistment right to "enlisted men who were discharged from the Army to accept a commission in the National Guard, or in any volunteer force that may be authorized in the future, at the call of the President, June Eighteenth, nineteen hundred and sixteen . . ." [4] This enactment has never been amended or repealed [5] but its reference to the call of the President of June 18, 1916 indicates that its application has practically passed into desuetude. It does, in the next succeeding paragraph, provide for *retirement and pay* credit for "any enlisted man of the Army who shall be discharged to enable him to accept a commission in the Officers' Reserve Corps, or in any National Guard or militia organization, or in any volunteer force that may be authorized in the future, and *who shall enlist in the Army within three months after the termination of his connection as an officer with that corps or with any organization of the National Guard or militia, or a volunteer force, or during the continuance of his*

unteer force that may be authorized in the future, and who shall enlist in the Army within three months after the termination of his connection as an officer with that corps or with any organization of the National Guard or militia, or a volunteer force, or during the continuation of his connection therewith, as an officer, shall, in computing continuous service pay now authorized by law, be entitled to credit for the period of time actually served by him prior to said discharge, and in computing service for retirement and continuous service pay, service as an officer of the National Guard, while in the service of the United States, service in any volunteer force, and service in the Officers' Reserve Corps in active service shall be counted.

Act of May 12, 1917, Ch. 12, 40 Stat. 74.

**5.** U.S. Code of 1926 at 1841.

*connection therewith, as an officer . .*"[6] (emphasis added). While the class of officers covered by this second paragraph is somewhat broader than is covered in the preceding paragraph, this second paragraph does not contain any reenlistment right for such broader group.

The provisions of the 1917 Act are of importance because during the passage of the 1918 Act Representative Dent, the Chairman of the House Committee on Military Affairs, from which the pertinent Bill emanated, remarked upon the floor of the House:

> Mr. Speaker, at the last session of Congress a bill was passed which provided that an enlisted man in the Regular Army who accepted a commission in the National Guard could .be reenlisted or restored to his position as an enlisted man *after his temporary commission expired.* This bill is intended to extend the provisions of that act so as to include any enlisted man who may take a commission in the National Army. There are men who have served for many years in the Army and have noncommissioned positions now such as sergeants and corporals. They do not wish to take a commission in any branch of the service if their length of service as an enlisted man in the Army should be impaired thereby.[7]

(Emphasis added).

Thereafter, Congress passed the Act of March 30, 1918 extending reenlistment and retirement credit rights to ". . . any enlisted man of the Army of the United States who . . . shall hereafter be . . . discharged to accept a commission in *any* component part of the Army of the United States, and who shall tender himself for enlistment *within three months after the termination of his commissioned service . . . .*"[8] (Emphasis added). This Act was passed by a separate Bill (H.R. 9903) which was reported out of the House Committee on Military Affairs following a February 7, 1918 letter of transmittal from the Secretary of War, accompanied by a draft of the proposed legislation. The letter stated that it transmitted a:

> Draft of proposed legislation providing that each enlisted man, discharged to accept a commission, and *afterwards discharged from such commission status,* shall be restored to the grade held before being discharged to accept such commission, provided that such enlisted man shall again enlist within three months of the date of his discharge as an officer.

H.R.Rep.No.324, 65th Cong., 2d Sess. 1 (1918) (Emphasis added). The March 19, 1918 Report of the Senate Committee on Military Affairs contained an identical statement concerning the purpose and intent of the bill. S.Rep.No.320, 65th Cong., 2nd Sess. 1 (1918).

The Army concludes from the foregoing (1) that the 1918 statute "provided a right to reenlist only to an enlisted man who was discharged in order to accept a temporary commission," and (2) that "no provision was established for the protection of enlisted men who were also reserved officers and who were discharged from their enlisted

---

6. 40 Stat. 74, *supra* note 4.

7. 56 Cong.Rec. 2874 (1918) (Remarks of Representative S. Hubert Dent, Jr., Chairman of the House Committee on Military Affairs).

8. The Act provided:
 CHAP. 37—An Act To provide for restoration to their former grades of enlisted men discharged to accept commissions, and for other purposes.
 *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That any enlisted man of the Army of the United States who has heretofore been, or shall hereafter be, discharged to accept a commission in any component part of the Army of the United States, and who shall tender himself for enlistment within three months after the termination of his commissioned service, shall, subject to such examination for enlistment as is provided by law or regulation, be accepted and be restored to the grade held by him before being discharged to accept such commission; and in computing service for retirement and continuous service pay he shall be credited with all time served with the forces of the United States, and his service shall be deemed continuous notwithstanding the interruption thereof by the changes of status provided for herein.
 Act of March 30, 1918, Ch. 37, 40 Stat. 501.

status upon being called to active duty as reserve officers."[9] The first conclusion above is self-evident, but the relevance to this case of the second clusion is questionable because Fairbank was never an officer in the Reserve at any time while he was an enlisted man.

### B. *The Act of July 14, 1939.*

However, if the 1918 Act was defective in failing to recognize enlisted men who were discharged following their call to serve on active duty as Reserve Officers under previously held commissions, such omission was rectified by the passage of the Act of July 14, 1939 entitled, "To provide for the status of warrant officers and of enlisted men of the Regular Army who serve as commissioned officers." This Act, passed shortly prior to World War II, granted substantially the same rights to enlisted men and Warrant Officers who were called to active duty under preexisting Reserve commissions as had previously been provided for enlisted men who were discharged to accept newly bestowed commissions; and, while the 1939 Act expressly repealed the 1918 Act, it continued and broadened the 1918 policies by reenacting the substance of the 1918 provisions while extending to six months the period within which reenlistment might be sought. The Act provided:

> That hereafter any warrant officer or enlisted man of the Regular Army who shall serve on active duty as a Reserve officer of the Army of the United States or who shall be discharged to accept a commission in the Army of the United States and whose active service as a commissioned officer shall terminate honorably, shall be entitled, without regard to any physical disqualification incurred, or having its inception, while on active duty in line of duty, to reapppointment as warrant officer or to reenlistment in the grade held prior to such commissioned service, without loss of service or seniori-

ty and without regard to whether a vacancy exists in the grade of warrant officer or in the appropriate enlisted grade: *Provided,* That application for reappointment or reenlistment shall be made within six months after the termination of such commissioned service in each case: *Provided further,* That warrant officers and enlisted men of the Regular Army shall be entitled to count active commissioned service in the Army of the United States as warrant or enlisted service for all purposes.

> Sec. 2. The Act approved March 30, 1918 (40 Stat. 501), is hereby repealed.

(53 Stat. 1001). The letter from the Secretary of War to the Chairman of the Senate Committee recommending the legislation, and submitting a draft bill, referred principally to the expanded purpose of the Bill [10] and referred to the prior law as granting reenlistment rights to covered enlisted men ". . . *upon termination of [their] commission*" when they had been "discharged to accept a commission during an emergency . . ."[11] (Emphasis added). The letter also stated:

> It [the proposed legislation] extends the period for application for reinstatement in former status *after termination of commission* from 3 to 6 months.

S.Rep.No.397, 76th Cong., 1st Sess. 2 (1939). The Senate Report includes several legislative interpretations of the Bill's provisions:

> The purpose of this bill is to provide that enlisted men or warrant officers serving on active duty as Reserve or emergency officers shall be entitled, *upon termination of the commissioned status* to revert to the enlisted or warrant status which they held prior to going on active duty as officers. Under the present law, which is the act of March 30, 1918, enlisted men discharged to accept a commission during an emergency can, *upon termination of that commission,* be reenlisted

---

9. Appellee Br. 7.

10. Letter from Hon. Harry H. Woodring, Secretary of War, to Sen. Morris Shepard, Chairman, Committee on Military Affairs, U.S. Senate,

January 31, 1939; S.Rep.No.397, 76th Cong., 1st Sess. 2 (1939).

11. *Id.*

subject to physical qualifications and restored to the grade held at the time of discharge. However, no such provision exists for those men who in time of peace have qualified for Reserve commission and who subsequently may be called to active duty. In this connection, the Comptroller General has ruled that the status of these men as enlisted men or warrant officers must terminate whenever they are called to active duty under their commissions and when their active duty as commissioned officers is ended, they would have to reenlist and that reenlistment would have to be in the lowest grade.

This legislation affords protection to enlisted men and warrant officers called to duty under Reserve commissions as well as other enlisted men and warrant officers who may be discharged to accept commissions in the Army of the United States in time of an emergency, and the committee is of the opinion that such protection should be accorded these men since there are approximately 385 warrant officers and 3,000 enlisted men now holding reserve commissions.

S.Rep.No.397, *supra*, at 1 (Emphasis added). The House Committee Report contains practically identical language. H.R.Rep. No.730, 76th Cong., 1st Sess. 1 (1939). The Army recognizes that the 1939 Act covered both enlisted men called to active duty who already "held reserve commissions" as well as those "discharged [from the Regular Army] to accept temporary commissions."[12]

C. *The Warrant Officer Act of 1954.*

■ The next change in the statute was made by the Warrant Officer Act of 1954, which was generally designed to eliminate "dissimilarity of existing laws and regulations on promotion and retirement of warrant officers in the various military services."[13] It also removed warrant officers from the subject statute and limited "the future applicability of [the reenlistment] . . . privilege [of the July 14, 1939 statute] to enlisted men only (of the Regular Army and Regular Air Force) . . ."[14] After the 1939 Act was modified by the 1954 Amendments, the residual statute provided:

That hereafter any enlisted man of the Regular Army or Regular Air Force who shall serve on active duty as a Reserve officer or warrant officer of the Army or Air Force or who shall be discharged to accept appointment as a commissioned officer or warrant officer in the Army or Air Force *and whose active service as a commissioned officer or warrant officer shall terminate honorably*, shall be entitled, without regard to any physical disqualification incurred, or having its inception, while on active duty in line of duty, to reenlistment in the grade held prior to such service as a commissioned or warrant officer, without loss of service or seniority and without regard to whether a vacancy exists in the appropriate enlisted grade: *Provided*, That application for reenlistment shall be made within six months, or within such other period of time as the appropriate Secretary may prescribe in exceptional circumstances, *after the termination of such service* as a commissioned officer or warrant officer in each case: *Provided further*, That enlisted men of the Regular Army and Regular Air Force shall be entitled to count active service as a commissioned officer or warrant officer in the Army and Air Force as enlisted service for all purposes.

68 Stat. 166. (Emphasis added in Appellee Br. 12). From this statute, the Army by its emphasis on "the termination of such service" argues, "it is clear . . . that once active service ends, the six-month period begins to run."[15] This is unquestioned, but it does not foreclose the possibility that Congress intended that former enlisted men should have a reenlistment right *whenever*

---

**12.** Appellee Br. 11, referring to S.Rep.No.397, *supra* note 7.

**13.** S.Rep.No.1284, 83rd Cong., 2d Sess. 2 (1954).

**14.** *Id.* at 15.

**15.** Appellee Br. 12.

their "active service as a commissioned officer . . . shall terminate honorably;"[16] or, as the House Committee Report on the 1939 Act stated: ". . . upon termination of the commissioned status;"[17] or, "upon termination of that commission."[18]

There have been two subsequent amendments to this statute, but the law as it existed following the 1954 amendment has a special importance because it was while the representations of that statute were being held out to enlisted men that Fairbank, on March 7, 1955, accepted his discharge from active duty as a Sergeant so he would become eligible to be commissioned as an officer. We conclude that the 1954 Act established a floor of rights for Fairbank and other enlisted men who acted similarly during the existence of that statute. Thereafter Congress could add to those rights but could not take any of them away after an enlisted man, during the currency of the statute, had relied upon its provisions and substantially altered his position by accepting a discharge from his enlisted status in order to be commissioned as an officer.

D. *The 1956 Codification of the Armed Forces Laws.*

In 1956 all the laws relating to the Armed Forces and the National Guard were revised, codified and enacted into law as Title 10, United States Code.[19] Both the letter transmitting the draft legislation to the Speaker of the House of Representatives and the House Report on the Bill (H.R. 7049) which was enacted into law indicate that there was no intent to change existing law.[20] More importantly the statute provided:

> In sections 1–48 of this Act, it is the legislative purpose to restate, without substantive change, the law replaced by those sections on the effective date of this Act.

70A Stat. 640.

As codified in 1956 the relevant statute provided:

> § 3258. Regulation Army: reenlistment after service as an officer
>
> Any *former* enlisted member of the Regular Army who has served on active duty as a reserve officer of the Army, or who was discharged as an enlisted member to accept a temporary appointment in the Army, is entitled to be reenlisted in the Regular Army in the enlisted grade that he held before his service as an officer, without loss of seniority or credit for service, if his service as an officer terminated honorably, and he applies for reenlistment within six months or such other period as the Secretary of the Army prescribes for exceptional circumstances after the termination of that service, regardless of the existence of a vacancy in his grade or of a physical disability incurred or having its inception in line of duty.

---

**16.** Act of May 29, 1954, Ch. 249, § 19, 68 Stat. 166.

**17.** H.R.Rep.No.730, 76th Cong., 1st Sess. 1 (1939).

**18.** *Id.*

**19.** Act of August 10, 1956, Ch. 1 *et seq.*, 70A Stat. 1 *et seq.*

**20.** The transmittal letter from the Department of Defense stated:
> The proposed bill is intended to be a restatement of existing law of general significance. It is not designed to change in any respect the substance of that law; substantive improvements in existing law have not been included but have been reserved for future consideration in appropriate instances.

H.R.Rep.No.970, 84th Cong., 1st Sess. 18 (1956).
> The Senate Report also states it recognizes that "the law is intended to remain unchanged." S.Rep.No.2484, 84th Cong., 2d Sess. 21 (1956). The House Committee Report states:
> *The object of the new titles has been to restate existing law, not to make new law.* Consistently with the general plan of the United States Code, the pertinent provisions of law have been freely recorded and rearranged, subject to every precaution against disturbing existing rights, privileges, duties or functions . . .. (Emphasis added).

H.R.Rep.No.970, 84th Cong., 1st Sess. 8 (1956).

70A Stat. 178 (Emphasis added). Appellee feels a need to assert that the insertion of the word *"former"* "was not intended as a substantive change"[21] but was inserted "for clarity."[22] This is merely another way of saying that the statute as previously drafted was designed to benefit *"former* enlisted men." It seems evident that Congress intended to confer *reenlistment* rights on *"former* enlisted men" and not on "enlisted men," as could be contended from an overly literal reading of the prior statute. This is so because an enlisted man already occupies enlisted status and does not need to reenlist to become an enlisted man. Further, of course, it is obvious that the designation of *"any* former enlisted [man]" was not intended to overshadow the other requirements of the statute. They must still be satisfied.

E. *The 1958 Amendment.*

The final amendment to the statute came in 1958. Its purpose was stated in the Report of the Senate Armed Services Committee:

> The objective of this bill is to prohibit officers who formerly had an enlisted status from having the right to reenlist in their former enlisted grade when their service as an officer is terminated, unless they receive an honorable discharge or their officer service terminated for a reason other than to await appellate review of a general court-martial sentence that includes a dismissal or dishonorable discharge.

S.Rep.No.1864, 85th Cong., 2d Sess. 1 (1958), U.S.Code Cong. & Admin.News 1958, p. 3296. As so amended the statute emerged in its present form:

> § 3258. Regular Army: Reenlistment after service as an officer
>
> Any former enlisted member of the Regular Army who has served on active duty as a Reserve officer of the Army, or who was discharged as an enlisted member to accept a temporary appointment as an officer of the Army, is entitled to be reenlisted in the Regular Army in the enlisted grade that he held before his service as an officer, without loss of seniority or credit for service, regardless of the existence of a vacancy in his grade or of a physical disability incurred or having its inception in line of duty, *if (1) his service as an officer is terminated by an honorable discharge or he is relieved from active duty for a purpose other than to await appellate review of a sentence that includes dismissal or dishonorable discharge,* and (2) he applies for reenlistment within six months (or such other period as the Secretary of the Army prescribes for exceptional circumstances) after termination of that service. However, if his service as an officer terminated by a general discharge, he may, under regulations to be prescribed by the Secretary of the Army, be so reenlisted.

72 Stat. 526 (Emphasis added). The italicized language is new matter. It changed "terminate honorably" to "terminated by an honorable discharge;" and, *for the first time in the entire history of this legislation, the statute provided a reenlistment right to anyone otherwise eligible who "is relieved from active duty,"* as is the usual case with Reserve Officers, and is the case in the action presently pending with respect to Fairbank.

## III. The Statute Applied to Appellant

 We examine the applicable statutes to determine precisely (1) the class of persons to whom Congress granted reenlistment rights, and (2) the time limitations imposed upon the exercise of such rights.

Beginning with the Act of May 12, 1917, Congress provided that those who were in the category of having responded to the President's call of June 18, 1916 were required to ". . . reenlist within three months from date of muster out of the United States Service . . ." (40 Stat. 74). (Hereafter the "first clause"). This applied principally to former enlisted men who formerly "were discharged" and thus

---

**21.** Appellee Br. 16.

**22.** *Id.,* referring to Historical and Revision Notes in 10 U.S.C.A. following § 3258.

were already in this status. A different rule, however, was enacted for members of "the Officers' Reserve Corps [those] . . in any National Guard or militia organization, or in any volunteer force . . . authorized in the future . . ." who were "hereafter . . . discharged." (40 Stat. 74). (Hereafter the "second clause"). The second clause was completely prospective. Its benefits were limited to the officer:

> who shall enlist in the Army within three months *after the termination of his connection as an officer with that corps* or with any organization of the National Guard or militia, or a volunteer force, or *during the continuation of his connection therewith, as an officer* . . .

40 Stat. 74 (Emphasis added). The italicized portions of this part of the statute contemplate reenlistment by an otherwise eligible officer within the stated period. The period would not begin to run until there was a "termination of his connection as an officer with that corps or with *any* organization of the National Guard . . militia, or . . . volunteer force." Otherwise stated, in the context of this case, the period would not begin to run until there was a termination of officer status with the Reserve Corps, which termination would not occur so long as the officer continued as an officer not on active duty in the Army but serving in the Active Reserve. The breadth of the Congressional intent in the 1917 reenlistment enactment is further evidenced by the retirement and pay provisions of the same 1917 Act. The retirement and pay provisions did not require reenlistment so long as the former enlisted man was serving as an officer in the Reserve or "*any* organization of the National Guard or militia, or a volunteer force . . ." (Emphasis added). It is a matter of common knowledge that these organizations only involved part-time service and that they were composed of members who were usually employed contempo-

raneously in some civilian occupation. Thus, the second clause of the 1917 Act provided that a former enlisted man, otherwise qualified, could, following semi-active service similar to appellant's status from 1957 to 1961, reenlist ". . . within three months after the termination of his connection [including a semi-active connection] as an officer with that corps . . ." and thereby retain previously accrued pay and retirement time. Furthermore, the statute granted credit for retirement and pay rights to former enlisted men who were officers and otherwise eligible if they enlisted at any time during the continuation of their connection with the Reserve, National Guard, or other service element as an officer. We conclude then that the 1917 statute should not be read to condition reenlistment rights upon the date of termination of the officer's service on active duty with the Army.

These provisions of the 1917 Act have never been expressly amended or expressly repealed[23] and, insofar as the second clause is concerned, this is of some importance to the interpretative problem we face, because in passing the 1918 Act, the Chairman of the House Committee which recommended the Bill stated that the 1918 Act was "intended to extend the [1917] provisions . . ."[24] This would have reference to the second clause as that was the only one that operated entirely *in futuro*.

With this background, Congress approved the 1918 Act[25] extending reenlistment rights to any former enlisted man who was discharged to accept a commission "in *any* component part of the Army of the United States, and who shall tender himself for enlistment within three months *after the termination of his commissioned service* . . ."[26] Since the commissioned service would be with the Reserve or National Guard unit, the time limit upon the right to reenlist would not begin to run until the service as a commissioned officer with that

---

23. Note 5, *supra*.

24. Note 7, *supra*, and accompanying text.

25. Note 8, *supra*.

26. *Id.*

unit was terminated. It would not begin to run when the officer was released from active duty with the Army unless that date coincided with the termination of the Reserve commission. This interpretation is consistent with the letter transmitting the proposed bill to the War Department [27] and with the Committee reports which referred to "each enlisted man . . afterwards *discharged from such commission status* . . ," [28] and which indicated a requirement that the eligible officer "enlist within three months of the date of his *discharge as an officer.*" [29] Since officers in the Reserve, National Guard, and other elements who were released from active duty with the Army would not thereby be "discharged from [their] commission status" or receive their "discharge as an officer," their release from active duty would not trigger the start of the three month period. The Senate Committee reports and the remarks on the floor of the House of Representatives indicated a similar intent by stating that the three months period would not begin to run until eligible officers were "discharged from . . . commissioned status," [30] and the Chairman of the sponsoring House Committee referred to the date as "after [the] . . . temporary commission expired." [31]

■ In 1939, the Secretary of War prepared and transmitted the draft bill to "replace the Act of March 30, 1918." [32] Its stated purpose was to "provide protection" for warrant officers and enlisted men who "hold Reserve commissions and who might be called to serve in an emergency on active duty under those commissions." [33] It was further stated that the draft legislation "differs from the Act of March 30, 1918 in respect to the following more important items":

(a) It extends protection to warrant officers as well as enlisted men.

(b) It accords protection to enlisted men and warrant officers called to duty under Reserve commissions as well as those discharged to accept commissions in the Army of the United States.

(c) It extends the period for application for reinstatement in former status after termination of commission from 3 months to 6 months.

(d) It provides that reversion to former status may be made upon application without regard to existence of a vacancy and without regard to any physical disqualification incurred in active service in line of duty. [34]

When this statement is added to the fact that the language of the new statute [35] closely followed that of the 1918 statute, it is apparent, even though some slight changes in wording were made, that Congress intended merely to extend the rights conferred on the 1918 groups to the warrant officers and enlisted men who already held Reserve commissions. This view is buttressed by the transmittal letter which analyzes the rights of enlisted men under the 1918 law and notes that "[N]o such provision exists" for the groups the draft statute proposed to add. [36] Furthermore, the Senate Committee Report indicated that eligible officers were to exercise their reenlistment rights "upon termination of the commissioned status," and "upon termination of that commission." [37] These references are consistent with a continuance of the same intent as the 1918 law. The critical language of the enacted statute, however, provided:

27. Text at 12, *supra*.

28. *Id.*

29. *Id.*

30. S.Rep.No.320, 65th Cong., 2d Sess. 1 (1918).

31. 56 Cong.Rec. 2874 (1918), *supra* note 7.

32. S.Rep.No.397, 76th Cong., 1st Sess. 2 (1939).

33. *Id.*

34. *Id.*

35. Act of July 14, 1939, Ch. 267, 53 Stat. 1001, text at 593, *supra*.

36. S.Rep.No.397, 76th Cong., 1st Sess. 2 (1939).

37. *Id.* at 1.

That . . . any warrant officer or enlisted man of the Regular Army [1] who shall serve on active duty as a Reserve officer of the Army of the United States or [2] who shall be discharged to accept a commission in the Army of the United States and whose active service as a commissioned officer shall terminate honorably, shall be entitled . . . to reenlistment . . . *Provided*, That application for . . . reenlistment shall be made within six months after the termination of such commissioned service . . . [38]

The Army contends that some of the differences in language between the 1939 and the 1918 statute indicate an intent to change the law so that the time within which an officer could apply for reenlistment began to run when he was released from active duty and not as formerly "after the termination of his commissioned service." [39] Principally, the Army points to the phrase "*such* commissioned service," following the "six months" designation and contends that it refers to "*active* service as a commissioned officer," which is in the fore part of the statute. This is a possible interpretation. "Such" used in this circumstance may indicate an intention to refer to the next antecedent; but this is not a universal rule,[40] and to cite the rule is to begin analysis, not end it. Actually, the statute relates to two groups of eligible officers: First, those who shall serve on "active duty as a Reserve Officer . . . " [41] and, Second, those "who shall be discharged to accept a commission in the Army of the United States." [42] With both groups it is a requirement that their "active service as a commissioned officer shall terminate honorably . . . " [43] In this context, the reference to "such commissioned service" might be interpreted to relate to those whose "active service . . . terminate[d] honorably" —which in the context of Army procedures would require the prior act of bestowal of an honorable discharge. Alternatively, "such commissioned service" might be interpreted to refer solely to service as a Reserve officer. This interpretation might be based on the fact that the statute was not sparing in its use of the adjective "active" when it intended to refer to "active" duty. It used the word "active" in the sentence three times before it referred to "such commissioned service," and immediately thereafter, when that was its intention, it referred to "*active* commissioned service." So the absence of the word "active" in the proviso dealing with the time limitation may be construed as indicating an intent to refer solely to active commissioned service that did "terminate honorably" and not require the reenlistment right to terminate six months after *release* from active duty. This would be consistent with the Senate Committee Report [44] and the practically identical House Committee Report.[45]

Some changes were also made in the statute by the Act of May 29, 1954 which shed light on the interpretation of the word "such." The changes generally placed warrant officers in a separate status and removed them in some respects from the statute here being considered. As amended, the statute provided that a reenlistment must be " . . . within six months . . . after the termination of such service *as a commissioned officer or warrant officer* in each case . . . " [46] (Emphasis added). The italicized words are new matter. The words do not indicate any new intent; the words merely add warrant officers to statutory coverage, so that

38. 53 Stat. 1001, text at 593, *supra*.

39. 40 Stat. 501, *supra* note 8.

40. *FTC v. Tuttle*, 244 F.2d 605, 611–15 (2d Cir. 1957); cert. den., 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 1436 (1957).

41. 53 Stat. 1001, text at 593, *supra*.

42. *Id.*

43. *Id.*

44. S.Rep.No.397, 76th Cong., 1st Sess. 1 (1939).

45. H.R.Rep.No.730, 76th Cong., 1st Sess. 1 (1939).

46. Act of May 29, 1954, Ch. 249, § 19, 68 Stat. 166.

"such" in the prior version apparently referred to commissioned service and not to active duty. Further, the codification of the Armed Forces statutes in 1956, according to the provisions of the codification and the committee reports,[47] did not intend to make any changes in the law, but it altered the applicable statute, with reference to our present interests, to read as follows:

> Any former enlisted member of the Regular Army . . . if his service as an officer terminated honorably, and he applies for reenlistment within six months . . . after the termination of that service . . . [48]

This statute deemphasizes "active duty" as contained in the 1954 and 1939 Acts and implies the interpretation that the time limit on reenlistment rights would not terminate until six months after "service . . . as an officer terminated honorably." Thus, the reenlistment right would not terminate—or even begin—until after the Reserve commission was "terminated honorably." This would not necessarily be upon release from active duty with the Army. If the 1956 codification did not change the law, and it stated it did not intend to do so, then the word "such" in the 1939 enactment referred to commissioned status and could not have referred to active duty.

Moreover, it must not be forgotten that a fundamental stake in this case is appellant's entitlement to military pension benefits. The present statute and its predecessors were enacted in substantial part due to a Congressional desire to provide that former enlisted men during their commissioned service would continue to accumulate years of service for retirement purposes,[49] and the rule at common law is that laws creating rights to pensions are to be liberally construed.[50]

We conclude that "such" in the 1939 enactment did not exclude officers in appellant's situation.

▮ The amendments of 1958 were principally intended to require an "honorable discharge" of an officer as a pre-condition to reenlistment, or that the officer be "relieved from active duty for a purpose other than to await appellate review of a sentence that includes dismissal or dishonorable discharge . . ."[51] As so amended the statute presently fits Fairbank's factual situation. It changed "terminate honorably" to the more precise "terminated by an honorable discharge." This makes it clear that, presently, the right to reenlist comes into existence whenever an otherwise eligible officer receives an "honorable discharge." Also, there is the first explicit recognition that reenlistment rights come into existence when one "is relieved from active duty." Of course, under the prior law an officer who was relieved from active duty could request to be discharged from his Reserve commission and, under normal circumstances, thereupon satisfy the "terminated honorably" requirement; but if the officer continued to hold his commission in the active Reserve his mere release from active duty with the Army, under the law prior to the Act of August 8, 1958, did not ripen into a right to reenlist so as to start the running of the six month reenlistment period. The controlling language of the statute presently provides:

> . . . if (1) his service as an officer is terminated by an honorable discharge *or* he is released from active duty . . . and (2) he applies for reenlistment within six months . . . after termination of that service.[52] (Emphasis added).

Thus, in 1958, *for the first time*, officers who were released from active duty for

**47.** Act of Aug. 10, 1956, 70A Stat. 640; note 20 *supra*.

**48.** *Id.*; 70A Stat. 179.

**49.** *See* text at 11, *supra*.

**50.** *See. e. g., Bellus v. City of Eureka*, 69 Cal.2d 336, 444 P.2d 711, 71 Cal.Rptr. 135 (1968); *Dillard v. City of Los Angeles*, 20 Cal.2d 599, 127 P.2d 917 (1942); *City of Tampa v. State ex rel. Evans*, 155 Fla. 177, 19 So.2d 697 (1944); *Fulton County v. Holland*, 71 Ga.App. 455, 31 S.E.2d 202 (1944).

**51.** 10 U.S.C. § 3258 (Act of Aug. 8, 1958, Pub.L. No.85–603, 72 Stat. 526), text at 6–7, *supra*.

**52.** *Id.*

proper purposes were given reenlistment rights. There is no indication that this provision does not, as its plain meaning indicates, apply to any officer whose service as an officer is altered after passage of the statute by being "released from active duty," and who otherwise qualifies under the statute.

## IV. Conclusion

The foregoing analysis of the legislative and statutory history establishes that appellant qualifies for reenlistment rights under the plain meaning of the provision of the current statute for a former enlisted member of the Regular Army "released from active duty."[53] In addition, if appellant obtains an honorable discharge, he will also qualify under the alternative provision for a former enlisted member of the Regular Army whose "service as an officer is terminated by an honorable discharge."

The purpose of the statutes in question was to serve the interests of the United States in times of national emergencies by obtaining needed military officers from enlisted ranks upon the promise that the former enlisted man could later resume his enlisted status and his progress to retirement "without loss of seniority or credit for service, *regardless of the existence of a vacancy in his grade* . . ." (10 U.S.C. § 3258) (Emphasis added). In carrying out the present reduction in forces the Army has suggested that Fairbank should not be permitted to reenlist, as a measure "to preclude involuntary separations of enlisted personnel in order to make room for former officers . . ."[54] But this is precisely the situation the statute

contemplated when it promised reenlistment rights to Fairbank "regardless of the existence of a vacancy in his grade." We hold that the government must keep its promise.[55] The fact that he was eligible to reenlist on a prior occasion does not foreclose his present eligibility.

The order of the district court, granting summary judgment to defendant and denying injunctive relief to plaintiff, is vacated, and the case is remanded to the district court with instructions to grant plaintiff's motion for summary judgment.

*Judgment accordingly.*

---

**53.** Since appellant went directly into commissioned service after relinquishing his regular enlisted status, there is no question of immediacy in this case, unlike *Frazier v. Froehlke* (W.D.La., May 25, 1975) and *Glemaker v. Schlesinger* (W.D.Ga., Aug. 6, 1973), *supra* note 3.

**54.** Dep't of the Army message, *supra* note 2; Appellee Br. 3.

**55.** The enlisted man's situation in America at times is not much different than in Great Britain.

[I]t's "Thank you, Mister Atkins," when the band begins to play. . . .
. . . it's "Special train for Atkins" when the trooper's on the tide—
at other times
. . . it's Tommy this an' Tommy that, an' "Tommy, go away" . . . An' Tommy ain't a bloomin' fool—you bet that Tommy sees!
From "Tommy," by Rudyard Kipling.