**Robert A. PAULS, Captain, United States Air Force, Plaintiff-Appellee,**

v.

**Dr. Robert C. SEAMANS, Secretary of the Air Force, et al., Defendants-Appellants.**

**No. 72-1208.**

United States Court of Appeals, First Circuit.

Submitted Aug. 3, 1972.

Decided Oct. 12, 1972.

---

---

Alan S. Rosenthal and William Kanter, Attys., Department of Justice, for

appellants on motion for summary reversal and memorandum in support thereof.

Harvey B. Nachman, San Juan, P. R., and Nachman, Feldstein & Gelpi, San Juan, P. R., for appellee upon memorandum in opposition to motion.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

An officer in the Air Force Reserve holding the rank of temporary Captain on active duty was scheduled for involuntary release under what was called Project 703, on June 30, 1970.[1] Several days prior to this date he brought suit to enjoin this action, and a temporary restraining order was issued on June 29, 1970. Hearing was deferred by stipulation accommodating the officer's new counsel, until August 13, 1970. The district court entered its judgment granting a preliminary injunction on December 30, 1970. During this period, in early November, 1970, the Captain completed eighteen years of active service. He now claims the partial sanctuary against discharge afforded by 10 U.S.C. § 1163(d) [2] and AFR 36–12, para. 9(c) [3] to Reserve officers on active duty who are within two years of becoming eligible for retirement benefits.

Other aspects of this litigation, in which the Captain challenged the application to him of rating procedures which resulted in his being passed over for

---

1. This program, under the authority of 10 U.S.C. § 681(a) and AFR 36–12, para. 71, sought to separate from active duty certain Reserve officers passed over for promotion. Some 600 officers were affected. Appellee was originally scheduled for separation on March 31, 1970, but, at his request, his date was reset to June 30, 1970.

2. 10 U.S.C. § 1163(d) provides as follows:
   "(d) Under regulations to be prescribed by the Secretary concerned, which shall be as uniform as practicable, a member of a reserve component who is on active duty and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system, may

not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary . . . ."

3. "c. *Retention of Reserve Officers on Extended Active Duty to Qualify for Retirement or Retired Pay.* Current legislation provides that members of the Reserve components serving on extended active duty will not be separated involuntarily for any reason unless their separation is approved by the Secretary of the Air Force, if on the dates established for their involuntary separation they are within 2 years of qualifying for retirement or retired pay under any purely military retirement system."

promotion and thus subject to involuntary discharge, have been considered by us in Pauls v. Secretary of the Air Force, 457 F.2d 294 (1st Cir. 1972). We there dissolved the injunction as improperly issued but specifically left open the issue of sanctuary. Since our earlier opinion, the Secretary has ruled that 10 U.S.C. § 1163(d) is not applicable to appellee and the district court, being persuaded to the contrary, has again enjoined the Air Force from involuntarily releasing appellee until he qualifies for retirement. The government moved for both a stay of injunction pending appeal and for summary reversal. We have earlier stayed the injunction, reserving decision on the request for summary reversal, to which we now address ourselves.

To begin with, the district court, quite understandably, was led to believe that more statutes and regulations are involved here than is in fact true. 10 U.S.C. § 1006, for example, relied upon in part by the district court, refers only to release from active duty under several chapters, which have reference only to failure to achieve promotion in reserve, not regular, grades. So also, paragraphs 9(a) and (b) of AFR 36–12, concern only officers released under different sections of the regulation than that being invoked against appellee.[4] We are left with 10 U.S.C. § 1163(d) and Para. 9(c) of AFR 36–12.

The court below relied on Roberts v. Vance, 119 U.S.App.D.C. 367, 343 F.2d 236 (1964). But that case dealt with a reservist who had, when his separation was ordered, achieved eighteen years of service. The court was dealing with procedures applicable to one who had reached sanctuary. Here we face the liminal question whether sanctuary had been reached. We readily concede that threading our way through the statutes and regulations is not a simple task. But, if we are right, 10 U.S.C. § 1163(d) is illuminated by the only relevant regulation, Para. 9(c) of AFR 36–12. The latter makes clear that sanctuary is reached "if on the dates established for [appellee's] involuntary separation [he is] within 2 years of qualifying for retirement". Perhaps too simplistically, it seems clear to us that on the date "established" for appellee's separation, June 30, 1970, he was not within two years of his retirement date. The fact that separation was not accomplished on the date established, because of an intervening restraining order, does not seem to us to have changed the fact that the date had been established.[5]

To be sure, this analysis presupposes that the determination of the date established for separation was a valid one. Should it be ultimately determined— whether by the Air Force alone or, if judicial review is permissible, by the court —that appellee's date of separation was the result of illegal and prejudicial consideration, this conclusion would fall.

But without considering this regulation, the district court held that the length of service condition of 10 U.S.C. § 1163(d) was met, even though it was met only with the aid of a court restraining order, later declared to be unjustified. While no cases pertaining to the acquisition of interests through an injunction later found to be ill advised have been cited to us, we find sufficient guidance in Arkadelphia Milling Co. v. St. Louis S. W. Ry. Co., 249 U.S. 134, 145, 39 S.Ct. 237, 242, 63 L.Ed. 517 (1919), where the Court, in requiring railroads to make restitution of charges in excess of a rate schedule which had wrongfully been enjoined, recognized "the principle, long established and of general application, that a party against whom an erroneous judgment or decree

---

4. Para. 9(a) applies to Reserve officers being separated under paragraphs 30, 31, 32, 35 and 36 of AFR 36–12. Para. 9(b) applies to those released under paragraphs 30 and 36. Appellee is sought to be separated under paragraph 71.

5. We contrast this regulation with 32 C.F.R. § 1626.41 which specifically sets aside an order to report for induction upon the taking of an appeal by a selective service registrant.

has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby." And further, "It is one of the equitable powers, inherent in every court of justice so long as it retains control of the subject-matter and of the parties, to correct that which has been wrongfully done by virtue of its process." *Id.* at 145–146, 39 S.Ct. at 242. *See also* Middlewest Motor Freight Bureau v. United States, 433 F.2d 212 (8th Cir. 1970). While both courts were dealing with the remedy of restitution, they saw it as the means of restoring the status quo ante. In this case, the only means of correcting that which has been wrongfully done is not to count, for purposes of a 10 U.S.C. § 1163(d) determination that appellee is "within two years of becoming eligible for retired pay", such active duty time as was obtained solely through an improperly issued restraining order and injunction.

While we may have some sympathy for appellee, who has, during his court-ordered service, performed creditably enough to receive a commendation, we see no other result which would be just to all. The happenstance of obtaining a temporary restraining order and preliminary injunction, subsequently set aside, has little to recommend it as a means of preferring appellee to his six hundred separated colleagues. Nor are we persuaded by the argument that the government, in stipulating to a continuance of the temporary restraining order pending the court's decision, has waived its objection to Pauls' continued service past his 18th year. Although it would have been proper for the government to have moved for a dissolution of the order, noting the problem of sanctuary, it justifiably relied on the court's promise of a decision within a few days of the last memorandum, on its hesitancy to appear to be urging a court to hasten its decision, and on its own assumption that the order was designed to maintain the status quo, not to create new rights. We therefore conclude that 10 U.S.C. § 1163(d) does not apply to one in appellee's circumstances.

Judgment is reversed.