John C. FAIRBANK, Plaintiff,

v.

Harold BROWN, Secretary of Defense, and Clifford L. Alexander, Jr., Secretary of the Army, Defendants.

Civ. A. No. 77–1801.

United States District Court, District of Columbia.

Dec. 31, 1980.

Henry B. Rothblatt, Washington, D. C., for plaintiff.

Nathan Dodell, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

John Fairbank, a Reserve officer[1] with 18 years of active duty service challenges

---

1. The reserve force is a voluntary segment of the armed services used to supplement the regular forces (career committed forces) in times of national emergency. Additionally, the core of Regular Army officers may be expanded with Reserve officers when the need arises. At

the end of a national emergency, the total force reverts back to the core Regular Army officers and any Reserve officer who elects to stay on active duty. Any Reserve officer who remains on active duty is on notice that he can be

his involuntary release from the United States Army in 1976. He claims that it was without the personal approval of the Secretary of the Army as required by law and additionally that other required statutory procedures were not observed. He seeks a judgment declaring his involuntary release was null and void in that it violated the applicable statute, 10 U.S.C. § 1163(d), the Army regulations, and the fifth amendment of the United States Constitution. He also seeks preliminary and permanent injunctive relief against the responsible military officials, restoration of his former Reserve officer rank, together with all rights, privileges and emoluments to which he is entitled.

Section 1163(d) of Title 10 provides that "a member of a reserve component who is on active duty and is within two years of becoming eligible for retired pay ... under a purely military retirement system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary". The companion Army regulation further explains that the officer must complete 18 years of service by his scheduled release date. A.R. 635–100, para. 3–58(e).[2]

Lt. Col. Fairbank, a Reserve officer, was scheduled for release in 1973 after 15 years of active duty service. Because of intervening litigation initiated by Fairbank, his release was stayed until 1976. By that time he had completed over 18 years of service. In his litigation, Fairbank had challenged an earlier decision of the Army Secretary denying him the right to reenlist as an enlistee because there had been a break in his active duty service. He ultimately prevailed in that litigation and the appellate court held that the fact that he was eligible to reenlist on a prior occasion did not foreclose his present eligibility to reenlist.[3]

The question now presented is whether Fairbank is entitled to the protection of § 1163(d) because he completed 18 years of active duty service before the Army released him in 1976 after the stay issued by the court of appeals was lifted.

■ The parties have presented cross-motions for summary judgment.[4] After consideration of the memoranda of counsel and the affidavits and exhibits submitted in support thereof, the Court determines that summary judgment should be granted for the defendants and Fairbank's complaint should be dismissed. Section 1163(d) should not afford protection to a plaintiff under the circumstances of this case nor serve as a basis for a challenge to his release from active duty service as a Reserve officer. The reasons in support of this conclusion are set forth below.

*The Factual and Statutory Background*

The material facts are undisputed. Fairbank enlisted in the Regular Army on September 8, 1953. He served until his discharge in 1955 for the express purpose of

released at any time by the Secretary pursuant to 10 U.S.C. § 681(a).

**2.** Army Regulation 635–100, para. 3–58(e) provides:

Officers who will complete 18 or more years of active Federal service on their scheduled release date will *not* be processed under this section, unless such action is approved by the Secretary of the Army, but will be retained on active duty until the last day of the month following the month in which they complete 20 years of active Federal service. (emphasis in original)

**3.** Fairbank's application for reenlistment as an enlistee was denied by the Army and he brought suit in the district court. The Army contended that he had no right to reenlist under 10 U.S.C. § 3258 because he failed to exercise such right when he was released from active

service in the Regular Army in 1957. The district court upheld this decision over Fairbank's objection that he remained on reserve status during that time and had no duty to reenlist. On appeal, the court analyzed the legislative history of § 3258 and concluded that Fairbank qualified for reenlistment rights under the plain meaning of the statute and that his failure to reenlist in 1957 did not affect this right. *Fairbank v. Schlesinger*, 533 F.2d 586 (D.C.Cir. 1975).

**4.** Defendants also submitted a motion to dismiss based on this Court's lack of subject matter jurisdiction. That motion is denied. Because Fairbank seeks a declaratory judgment in an action arising under a federal statute, jurisdiction is conferred by 28 U.S.C. § 1331.

accepting a commission in the Army Reserve. He then served as an active duty Reserve officer until 1957, when his period of obligated service expired. Fairbank then continued as a member of the Army Reserve, but did not participate on active duty until 1961. From this later date, he served on active duty status until May 31, 1973 when, along with 4899 other Army Reserve officers, he was selected for release pursuant to 10 U.S.C. § 681(a). Under that section the Secretary was authorized to exercise wide latitude in releasing a reservist from active duty. Fairbank was released because of budgetary constraints and a reduction in authorized Army strength.[5]

In August 1973 Fairbank applied for and was denied an opportunity to reenlist in the Regular Army. Thereafter, he filed suit requesting the court to grant injunctive and declaratory relief, recognizing his right to reenlist in the Regular Army in an appropriate enlisted grade.[6] His right to reenlist was upheld by the court of appeals in December 1975, and on remand, the district court directed the Army to process his reenlistment.

Several months later, in April 1976, Fairbank was again approved by the Secretary of the Army for official release from active duty as an Army Reserve officer, effective immediately. At that time, Fairbank had more than 18 years of total active service. Thereafter, he continued service on active duty as an enlistee in the Regular Army until 1978, when he was placed on the retired list in the grade of Lieutenant Colonel and began to draw the retired pay of that grade.

Two military statutes are involved in this proceeding: 10 U.S.C. § 681(a) and 10 U.S.C. § 1163(d). The first confers upon the Secretary absolute discretion to release a reservist at any time.[7] Fairbank does not base his challenge on any right conferred by that section. Instead, he claims protection under § 1163(d) as an 18-year reservist. That section and its companion Army regulation, A.R. 635–100, para. 3–58(e), preclude the discharge of a reservist with 18 years of service except with the special concurrence of the Army Secretary. Section 1163(d) places limitations on the separation of active duty reservists who are within two years of becoming eligible for retirement benefits. The Secretary of the Army must approve the release of all 18–year reservists or they must be retained on active duty until completion of 20 years of active service, at which point they are entitled to retirement benefits. Section 1163(d) was originally enacted as part of an act to provide a lump-sum readjustment payment to members of the Reserve components who were involuntarily released from active duty. [see former 50 U.S.C. § 1016 (1958)].[8] The law provided separated reservists with the financial means to aid readjustment to civilian life. The reservist was entitled to a payment equal to one-half of one month's basic pay in the grade in which he was serving at the time of the release, for each year of his active service duty ending at the close of the eighteenth year. The computation ended at the eighteenth year because thereafter a reservist was assured he would be retained until he was eligible for retirement benefits unless the Secretary approved his release.[9]

---

5. The United States was no longer involved militarily in Southeast Asia and the need for an expanded officer corps disappeared. Boards were created to select officers for involuntary release from active duty by applying qualitative criteria to select the least competitive officers. Plaintiff was one of 4900 officers identified for release.

6. *Fairbank v. Schlesinger, supra* note 3.

7. Section 681(a) of Title 10 provides:
   Except as otherwise provided in this title, the Secretary concerned may at any time

release a Reserve under his jurisdiction from active duty.

8. In 1962, Congress detached the section dealing with 18 year reservists from the readjustment pay provisions and put it under 10 U.S.C. § 1163 which dealt with limitations on the power to separate members of reserve components. S.Rep.No.1876, 87th Cong.2d Sess., *reprinted in* (1962) U.S.Code Cong. & Ad.News, 2456, 2458.

9. Both parties rely on the testimony of Colonel Benade, spokesperson for the Department of Defense, during the subcommittee hearings on the readjustment pay bill. Although he dis-

The legislative history indicates that its purpose was to provide some measure of economic security, an inducement for reservists to stay in the active service and "thereby reduce expensive personnel turnover and to increase the effectiveness of the armed services...." S.Rep.No.2288, 84th Cong., 2d Sess., *reprinted in* (1956) U.S.Code Cong. & Ad.News, 3061, 3062. The report further explained that "[a]fter 18 years of active duty, a reservist has reasonable assurance of qualifying for the immediate retirement compensation that is authorized after 20 years of active duty". *Id.* In short, the bill was aimed at increasing a reservist's feeling of security even though he could be released at any time under § 681(a).

While the legislative history provides a background to the purpose of this provision, it does not answer the question of concern to the Court—whether § 1163(d) should apply to a plaintiff who accumulated 18 years of service during a court issued stay pending the resolution of issues presented in an unrelated lawsuit.

### Legal Analysis

■ The case law interpreting § 1163(d) and the circumstances in which its safeguards are applied is admittedly scarce. ·In fact, the plaintiff failed to cite any case authority to support his contention.

The authority principally relied on by defendants, however, *Pauls v. Seamans*, 468 F.2d 361 (1st Cir. 1972), is instructive and, in the view of the Court, is dispositive of the issue presented. In *Seamans*, an Air Force Reserve officer, Pauls, was scheduled for release in June 1970 because of his failure to be promoted. He challenged in the district court the rating procedures utilized in the promotion process. Six months after he filed his complaint, in December,

1970, a preliminary injunction was entered and the Air Force appealed. In November 1970, Pauls completed 18 years of active service. He then claimed the partial sanctuary against discharge afforded by § 1163(d) and the Air Force regulations.[10] The court of appeals dissolved the injunction and, on remand, the district court found that he was entitled to application of § 1163(d). The appeals court reversed that determination, concluding that "the limited question was whether sanctuary had been reached". The question was answered in the negative and the court held at 363:

> Perhaps too simplistically, it seems clear to us that on the date "established" for appellee's separation, June 30, 1970, he was not within two years of his retirement date. The fact that separation was not accomplished on the date established because of an intervening restraining order, does not seem to us to have changed the fact that the date had been established.

After drawing this conclusion, the court discussed the equities of returning to the status quo after dissolution of an ill-advised injunction, refusing to allow such an injunction to bestow new rights upon the plaintiff. Fairbank attempts to distinguish *Seamans* on this very point. He argues that since his position on reenlistment rights was upheld on appeal, the injunction was not improperly issued and thus he is entitled to rights obtained in the interim. He further argues that the appellate stay which issued did not prevent the Army from removing him from officer service as long as he was retained on active duty in an enlisted capacity. Therefore, according to Fairbank, the Army allowed him to reach the sanctuary period and should be made to abide by its regulations. These distinctions are not persuasive and are considered far less impor-

---

cussed the circumstances under which an 18-year reservist could be released, his testimony sheds no light on the issue of whether Fairbank should be afforded the protections of § 1163(d). *See Subcommittee Hearing on H.R.6725 and H.R.1516*, House Committee on Armed Services, Subcommittee No. 1, 84th Cong. 1st Sess., 4585, (July 25, 1975).

**10.** The Air Force regulation at issue in *Seamans* is similar to the Army regulation of concern to this Court. AFR 36–12, para. 9(c) provides reservists sanctuary "if on the dates established for their involuntary separation they are within 2 years of qualifying for retirement or retired pay...."

tant than the principal holding of *Seamans* —namely, that the intervention of a court injunction should not bestow upon plaintiff any more rights than he originally possessed under § 1163(d).

A similar analysis was applied in *Cass v. United States*, 483 F.2d 220 (9th Cir. 1973), *aff'd on other grounds* 417 U.S. 72, 94 S.Ct. 2167, 40 L.Ed.2d 668 (1974). There, several Reserve officers challenged the denial of their rights to receive readjustment payments upon release from the armed services. At the time of the complaint, the officers had only four and one-half years of service. The statute required that five years of service be completed before a reservist is entitled to readjustment pay. 10 U.S.C. § 687(a). The question presented was whether or not four and one-half years could be rounded off to five years for eligibility purposes. During the pendency of the preliminary injunction, the reservists actually served five years and then claimed they qualified for readjustment pay under either interpretation of the statute. Relying on *Pauls v. Seamans*, the Court concluded "[t]he injunction created no additional rights in appellees that they did not have under the statute in question. Any other decision would allow appellants to 'bootstrap' themselves into eligibility". 483 F.2d at 222. This ruling was not challenged when the case was appealed to the Supreme Court. 417 U.S. at 74, n. 3, 94 S.Ct. at 2168, n. 3.

The logic of these cases is persuasive and their rationale apply to the facts and circumstances here presented. In August of 1973, plaintiff and nearly 5000 other reservists were scheduled for release from active duty due to reductions in active duty officer strength. The officers were chosen for involuntary release on the basis of a review of their military records, efficiency ratings and other qualitative criteria. It is significant that at that time, Fairbank did not challenge the release but merely sought to preserve his reenlistment rights which had been denied by the Secretary. He did not question the procedures used by the military to select him for release nor did he question the Secretary's authority under section 681(a) to effectuate the release.[11] Merely because of the delay in resolving the question of his reenlistment rights, Fairbank now challenges the Secretary's authority to carry out a release three years overdue.

Although the stay issued was not improper, it was issued to determine the plaintiff's reenlistment rights not the validity of his original scheduled release. Plaintiff should not be in a better position than the other reservists released under the same order, merely because he sought to vindicate a completely separate right. A stay is designed to preserve the status quo, not to create new rights. To find otherwise would only create an incentive for reservists to file complaints in order to delay scheduled releases.

Plaintiff's argument that defendants could have released him from active duty as a Reserve officer and placed him in an enlistee status to prevent him from reaching the sanctuary period is without merit. The *Seamans* court rejected a similar argument:

> Although it would have been proper for the government to have moved for a dissolution of the order, noting the problem of sanctuary, it justifiably relied ... on its own assumption that the order was designed to maintain the status quo, not to create new rights.

468 F.2d at 364. Similarly here, defendants had no duty to release plaintiff from active duty as a Reserve officer when there was no indication he would gain additional protection by remaining in officer status until his reenlistment rights were determined.

Furthermore, the policy behind § 1163(d) was to provide an incentive for reservists to

---

11. The reason plaintiff did not challenge his release under § 681(a) is most likely due to the fact that there is clear authority for the release of a reservist from active duty at any time and under conditions and circumstances within the discretion of the service. *Abruzzo v. United States*, 513 F.2d 608, 611 (Ct.Cl.1975); *Woodward v. Moore*, 451 F.Supp. 346, 348 (D.D.C. 1978).

stay in the Army and to provide additional security as reservists approached retirement. Plaintiff knew he was to be released and had no expectation of security in his status as an officer. By instituting his previous suit, Fairbank made it clear that he sought only the right to serve as an enlistee.

The remainder of plaintiff's arguments concern the procedures to be applied under § 1163(d) and the standard of judicial review for these procedures. Since this Court is of the opinion that § 1163(d) cannot be applied to plaintiff under these circumstances, it is not necessary to resolve the remaining issues.[12] The Secretary has broad authority under § 681(a) to discharge reservists at any time and reservists were aware of their service under such conditions.

*Conclusion*

The plaintiff may not claim the protections provided for 18-year reservists under 10 U.S.C. § 1163(d). His complaint should be rejected and the defendants' motion for summary judgment should be granted. An appropriate order accompanies this memorandum opinion.

12. Plaintiff's reliance on *Roberts v. Vance*, 343 F.2d 236 (D.C.Cir.1964), is misplaced because that case dealt with the procedures of releasing a Reserve officer under § 1163(d). Since this section may not be applied to the plaintiff, the procedures required under the section are not of concern to the Court.