**Allan F. FLEMING, Jr., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 664–81C.

United States Claims Court.

March 22, 1983.

John A. Everhard, Falls Church, Va., for plaintiff.

Michael D. Morin, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant; Steven M. Post, U.S. Dept. of the Army, Washington, D.C., of counsel.

## MEMORANDUM OF DECISION

NETTESHEIM, Judge.

At the conclusion of oral argument on March 18, 1983, the court announced its decision granting defendant's motion for summary judgment. The following memorializes the reasons for that decision.

### FACTS

Plaintiff served for varying periods from September 18, 1958, through December 10, 1980, with the United States Marine Corps Reserve, the United States Marine Corps, the United States Army, and the United States Army Reserve. He achieved a promotion to the permanent grade of captain in the Regular Army on June 8, 1973, and to the temporary grade of major on May 5, 1977. In 1979 and again in 1980 plaintiff was considered, but not selected, for promotion to the permanent grade of major. After the second selection board, by letter of June 19, 1980, the Personnel and Training Division advised plaintiff's commanding officer, re: "Notification of Pending Discharge from the Regular Army," that plaintiff had not been selected for promotion and that 10 U.S.C. § 3303 "require[d] the officer's discharge not later than the first day of the seventh month after the Secretary of the Army approves the promotion board's report. The Secretary approved the report on 23 May 1980." The letter also advised that plaintiff would be honorably discharged on December 1, 1980, admonishing, "This discharge date is established by Federal Statute and may not be changed." The parties do not dispute the accuracy of the dates set forth, and plaintiff advised at oral argument that he had received a copy of this letter. The official Certificate of Release or Discharge from Active Duty re-

flects that plaintiff was discharged on December 1, 1980. Plaintiff claims that he received on December 10 an order of discharge dated December 1, 1980.

Plaintiff's petition in the Court of Claims was filed on November 13, 1981, and claimed that his discharge on December 10, 1980,[1] was illegal and in violation of 10 U.S.C. § 3913 (1976), because on the date of discharge he had attained more than 18 years of active service and therefore was entitled to be retained on active duty until he completed 20 years of service, pursuant to 10 U.S.C. § 3913(b). The legality of plaintiff's discharge was also attacked as based on a highly derogatory and promotion-damaging Officer Evaluation Report ("OER") for the period August 5, 1974, to March 25, 1975.

Defendant moved for summary judgment on August 2, 1982, disputing that plaintiff had served 18 years' active duty on the date of discharge, December 1, 1980, and asserting the bar of the doctrine of laches against his challenge to the OER, as well as arguing that plaintiff had not overcome the presumption of correctness attaching to the OER. On December 30, 1982, plaintiff opposed the summary judgment motion, averring that he had achieved total active service of 18 years and five days as of December 10, 1980, in contradiction to defendant's claim that plaintiff had achieved 17 years, ten months, and 13 days as of December 1, 1980. An additional question of fact was raised as to whether the discharge order was executed on December 1 or December 10, 1980. Regarding the laches issue, plaintiff stated:

> Plaintiff does not oppose defendant's second contention that his claim that his Officer Evaluation Report issued for the period August 5, 1974 to March 25, 1975 was inaccurate and improper and that his consequent non-selections for promotion and discharge flowing therefrom were illegal is barred by the doctrine of laches and submits the issue to the Court on the pleadings.

On February 17, 1983, defendant replied conceding that "sometime between December 1, 1980 and December 10, 1980 he [plaintiff] achieved 18 years of creditable service.[2]" According to defendant, this concession did not change the result that plaintiff was not entitled to be retained on active duty, because an officer must have achieved 18 years of service by the mandatory discharge date—in this case, December 1, 1980.

## DISCUSSION

This court had occasion recently to explicate the standards guiding its adjudication of a motion for summary judgment and an opposition thereto in *Lehner v. United States,* 1 Cl.Ct. 408, at 412–13 (Cl.Ct.1983) (NETTESHEIM, J.). That discussion is appropriate to this case and will not be repeated.

1. *Eligibility for Serving Until Retirement*

■ The gravamen of plaintiff's opposition is that a discharge is not effective until it has been delivered to plaintiff. Plaintiff argues (not by way of affidavit) that he received his discharge order on December 10, 1980, by which date indisputably he had served 18 years' active duty.

The pertinent language of the governing statute, 10 U.S.C. § 3303, *repealed by* Defense Officer Personnel Management Act, § 204, 94 Stat. 2835, 2880 (1980), reads as follows:

> (d) A deferred officer who is not recommended by the next selection board considering officers of his grade and promotion list shall—
>
> *       *       *       *       *       *
>
> 3) if he is not eligible for retirement under section 3913 of this title or any other provision of law, be honorably discharged on such date as may be requested by him and approved under regulations to be prescribed by the Secretary of the

---

1. Defendant contends that plaintiff was discharged on December 1, 1980.

2. This is an apparent concession that defendant served after December 1, 1980.

Army, but not later than the first day of the seventh calendar month after the Secretary approves the report of that board . . . .

AR 624–100 2–16(b), implementing section 3303(d), reads:

2–16. Regular Army officers. a. A 2LT, with less than 3 years of continuous RA service, who is not selected to 1LT, RA, will be discharged as provided in 10 U.S.C. 3814.

b. An officer twice not selected to RA CW2, CW3, CW4, CPT, MAJ, or LTC will be discharged or retired (10 U.S.C. 564, 3303) as stated below:

| If – | Then he will be – |
| --- | --- |
| Not eligible for retirement or within 2 years of retirement. | Discharged. |
| Qualified for retirement. | Retired (10 U.S.C. 3913). |
| Within 2 years of retirement on the date of his mandatory discharge. | Retained on active duty until retired or sooner separated (commissioned officers). |
| Within 2 years of retirement on the date the Secretary of the Army approved the second board. | Retained on active duty until retired or sooner separated (WOs). |

Unless sooner retired or separated under another provision of law, a deferred officer who is not recommended for promotion under section 3303(c) of this title . . . but is within two years of becoming entitled to retirement under subsection (a) or some other provision of law, shall be retained on the active list in his regular grade until the date he completes 20 years of service . . . , or the first day of the seventh calendar month after the Secretary approves the report of the last board that did not recommend him for promotion to the grade concerned, whichever is later, and then retired.

The repealing statute, which is not at issue here, leaves no doubt that the 18 years must be completed as of the statutory date of discharge. With respect to an officer of the regular army who holds the regular grade of captain or major who has failed to be selected for promotion to the next higher grade for the second time:

if on the date on which he is to be discharged . . . he is within two years of qualifying for retirement . . . , [he shall] be retained on active duty until he is qualified for retirement and then retired under that section, unless he is sooner retired or discharged under another provision of law.

Pub.L. 96–513, 94 Stat. 2835, 2862 (1980), 10 U.S.C. § 632(a)(3) (Supp. V 1981) (emphasis added).

Defendant's argument is addressed to the statutory language; plaintiff's opposition is confined solely to an implicit requirement of delivery of notice of discharge, which admittedly is not found in the statutory language. Defendant cites no authority for the proposition that plaintiff's discharge on or before December 1, 1980, was mandated by statute. However, in *Hadley v. Secretary,* 479 F.Supp. 189 (D.D.C.1979) (action by major in the Army Medical Corps to compel Secretary of the Army to discharge him under section 3303(d)(3) as an officer who had been twice denied promotion), the court held that the word "shall" in section 3303(d) did not mean that the discharge was mandatory, but,

To the extent that section 3303(d) imposes *any* mandatory duty upon the Army, it is to protect the interests of a non-promoted officer *after* the Army has made a discretionary determination to discharge him. It requires the Army to separate the officer in accordance with the provisions of section 3303(d)(1–3) rather than by immediate discharge, without severance pay or concern for upcoming retirement dates.

479 F.Supp. at 193 (emphasis in original).

While not a mandatory requirement, cases involving reservists adopt the construction of similar statutory language urged by defendant, *see Pauls v. Seamans,* 468 F.2d 361 (1st Cir.1972); *Fairbank v. Brown,* 506 F.Supp. 336, 337 & n. 2 (D.D.C. 1980), and this court has not been provided with or discovered any authority that would dictate another result. In fact, plaintiff does not read the foregoing statutes differently, but argues that he was not discharged until December 10, 1980.

The authorities relied on by plaintiff do not support the assertion that a discharge must be delivered to be effective. For example, plaintiff cites 6 Dig.Ops. JAGAF Courts Martial § 49.1, which states:

The effective date [of separation] is defined as *the date of notice to the airman of his discharge* or release from active duty. This notice may be *either actual or constructive* and refers to notice of the orders discharging him and not to the certificate of separation in the form of either a discharge certificate or certificate of service. Inasmuch as the accused ... had notice of the orders discharging him, he was effectively released ... regardless of whether or not he ever received a certificate.

(Emphasis added.)

In JAG 220.815, 26 July 1919, a private in the regular army whose company went overseas to France while he remained in the United States due to arrest and subsequent confinement by civil authorities for drunkenness was said to have reenlisted constructively because he did not receive his discharge certificate dated December 1, 1917, and continued to serve in the Army. The military court held that the private was discharged on December 1, when the order directing his discharge was received at his station. In JAG 220.6, 7 May 1918, a private enlisted in the National Guard in Illinois was granted a furlough of six months during which his regiment was drafted into active service. He was discharged on September 18, 1917 (although he was on furlough in France), and the receipt of order directing his discharge by his regimental commander was held to be sufficient notice

of his discharge and subsequent service was deemed to be a constructive enlistment.[3] 3 Bull JAG 410 reports a case wherein constructive delivery of a discharge was not extended to a servicewoman absent without leave, in order to avoid immunizing such absences.

According to plaintiff, the foregoing authorities show that constructive notice is adequate only if the serviceman is not available at his post. An imaginative interpretation, it is rejected as an unpersuasive reading. The notion that an order of discharge must be delivered personally to plaintiff thus remains unsupported. AR 310–1, ¶ 14b provides:

"An order which is individual in its operation becomes effective only if the person concerned has *actual or constructive knowledge of its existence.*"

quoted in *Hoersch v. Froehlke,* 382 F.Supp. 1235, 1240 (E.D.Pa.1974) (emphasis in original.) In this case it is undisputed that plaintiff's commander received the June 19 notification of pending discharge on June 25, 1980, and that plaintiff himself received a copy of the notification. Plaintiff thus received both actual and constructive knowledge of his imminent discharge.

Because plaintiff claims that as of December 10, 1980, he had served 18 years, five days, and because, by his own admission, as of December 1, 1980, his total active service was less than 18 years, summary judgment appropriately can enter against plaintiff on this ground. Plaintiff had not completed 18 years' service as of the discharge date established by statute.[4]

---

**3.** These authorities were not submitted with plaintiff's papers and were filed subsequently at the court's request. Counsel are urged to facilitate full consideration of their arguments by providing to the court copies of all authorities cited which are not readily available in a general legal reference library.

**4.** At oral argument counsel for plaintiff and defendant stated that this was a case of first impression. In particular, plaintiff's counsel claimed that, while the military on other occasions has discharged an individual after the date of discharge, he knew of no instance where enforcement of the statutory date would

frustrate by such a small margin a serviceman's completion of 18 years' service. For the reasons discussed above, the court is constrained to apply the statutory date, the language of the statute being sufficiently clear and plaintiff having cited no authorities to the contrary. However, it should be noted that before the court is an individual who served with distinction in Vietnam earlier in his career and who was scheduled for discharge on an established—but not mandatory—date five days short of completing 18 years' service in the military.

## 2. *Application of the Doctrine of Laches*

Explored during oral argument was the scope of plaintiff's concession in his opposition that he "does not oppose" defendant's argument that the doctrine of laches applies. Plaintiff explained that he did not abandon the argument, but that he assumed that defendant would come forward with a substantial position on laches. Plaintiff's counsel asked the court to consider the matter on the pleadings.

This complicates the issue in that defendant neither argued any specific prejudice resulting from plaintiff's contesting an OER issued for the period August 5, 1974 through March 25, 1975, in a petition filed with this court on November 13, 1981 (more than six and one-half years after the OER was filed), nor did defendant ask the court to presume prejudice (as opposed to suggesting that the court could presume prejudice). Correspondingly, by resting on the pleadings, plaintiff does not put defendant to the task of making any particular showing.

The standards governing the doctrine of laches in military pay cases have been set forth by other judges of this court and need not be recapitulated here. *E.g., Shafer v. United States,* 1 Cl.Ct. 437, at 438–39 (1983) (MAYER, J.); *Mariner v. United States,* 1 Cl.Ct. 430, at 433–35 (1983) (GIBSON, J.); *Erickson v. United States,* 1 Cl.Ct. 163, at 165–66 (1983) (GIBSON, J.). Judge Gibson imposed the laches bar in *Erickson* challenging a defective OER issued for the year 1966–77, when administrative remedies were not initiated until over seven years after the OER issued. Plaintiff in that case pursued his administrative remedies for five years, eleven months at the conclusion of which he filed his petition in the Court of Claims. The aggregate delay before filing thus was 12 years. Likewise, in *Shafer,* the bar of laches was applied to a suit filed six years after plaintiff's involuntary release by which he challenged OER's issued four and five years theretofore and for which he had sought administrative relief in the interim.

In contrast, plaintiff in this case did not pursue his permissive administrative remedy and brought his case to the Court of Claims within eleven months of his discharge. This is not a case, like most situations in which the doctrine of laches is applied, in which a significant delay has occurred between discharge and initiation of suit. Rather, the six-and-one-half year interval in this case occurred between issuance of the OER and commencement of this litigation.

■ The Court of Claims left no doubt that the delay in filing in this court after the right to file arises does not restrict the laches inquiry. "We must ... consider time from the start of the controversy to the prospective date of judgment, not as a laches period itself, but in evaluating the reasonableness or excessiveness of that period." *Frommhagen v. United States,* 216 Ct.Cl. 1, 5, 573 F.2d 52, 55 (1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1219, 59 L.Ed.2d 457 (1979) (civilian pay) (quoted in *Baker v. United States,* No. 356–81C, slip op. at 4 (Ct.Cl. July 2, 1982) (military pay)); *see Adkins v. United States,* 228 Ct.Cl. —— (1981) (13 years between first contested OER and separation; "Where on notice of his claim and where plaintiff could have but failed to bring suit, he may be charged with periods of inexcusable delay even though such periods occurred prior to the accrual of the claim for limitations purposes."). *See also Plant v. United States,* 222 Ct.Cl. 682, 684 (1980) (civilian pay). *Deering v. United States,* 223 Ct.Cl. 342, 620 F.2d 242 (1980) (en banc), involved challenges to OER's issued two and five years, respectively, before the date of separation. Although plaintiff sued in the Court of Claims six years thereafter, the court noted with disapproval plaintiff's failure to pursue his administrative remedies between issuance of the OER's and his separation. 223 Ct.Cl. at 351 n. 3, 620 F.2d at 246 n. 3. The court concludes that laches appropriately can be invoked to bar consideration of an action by the military occurring over five years prior to discharge and one year prior to suit.

The issue then becomes whether the doctrine of laches is applicable based on presumed prejudice to defendant. Defendant cites *Wilmot v. United States,* 205 Ct.Cl. 666, 685 (1974), a civilian pay case in which the court specifically said that it would not indulge the presumption of prejudice. In *Steuer v. United States,* 207 Ct.Cl. 282 (1975), also relied on by defendant, the Court of Claims found obvious prejudice when plaintiff had been dismissed from the Army two days short of six years before bringing suit. "When the delay in bringing suit has been of such long duration that the burden of overcoming the possibility of prejudice to defendant has shifted to plaintiff to show that defendant is not prejudiced, and where plaintiff has not met that burden, his claim must fall before the concept that 'equity aids the vigilant, not those who slumber on their rights.' " 207 Ct.Cl. at 297. The court applies the presumption here in the face of plaintiff's failure to address the issue that prejudice may be lacking.

Because plaintiff's challenge to the 1975 OER is barred by laches, the merits of that claim will not be considered further.

Defendant's motion for summary judgment is granted, and the petition will be dismissed.

IT IS SO ORDERED.

Costs will not be assessed.