**Stuart SARGISSON, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 39–80C.**

United States Claims Court.

June 19, 1987.

540

Maurice F. Biddle, Flint Hill, Va., for plaintiff.

John S. Groat, Washington, D.C. (Lt. Col. Guy J. Sternal, Washington, D.C., of counsel; with whom was Asst. Atty. Gen. Richard K. Willard), for defendant.

## OPINION

SETO, Judge.

This military pay case comes before the court on defendant's motion for summary judgment and plaintiff's opposition to and cross-motion for summary judgment. Plaintiff in this action seeks reinstatement, back pay and allowances due as a result of his involuntary release from active duty as an Air Force reserve officer in June 1975. As a basis for this relief, plaintiff claims that the Air Force Board for Correction of Military Records (AFBCMR or Board) was arbitrary and capricious in its November 1979 decision to deny him reinstatement to active reserve duty. The cross-motions for summary judgment raise two issues: is plaintiff's action in the Claims Court barred by the doctrine of laches; and is the AFBCMR decision not to reinstate plaintiff arbitrary, capricious, unsupported by sub-

stantial evidence or contrary to law. For the reasons set forth in this opinion, the court finds that the action is barred by the doctrine of laches. Were it necessary to consider the merits on review we would find that the AFBCMR decision was based on substantial evidence and rendered according to law, and would therefore not be supplemented or overturned on review by this court.

## FACTS

Plaintiff, Stuart Sargisson, was commissioned as a reserve officer and began active duty as a second lieutenant in the United States Air Force on September 25, 1962. By July 1973 plaintiff had attained the temporary grade of major as a reserve officer. In November 1974, a Reserve Officer Screening Board (ROSB) convened to consider for release from active duty all reserve officers in groups containing surpluses. The releases were necessary to accommodate a reduction in military manpower requirements. Plaintiff's record was scored by the ROSB and he was consequently released from active duty. According to policy, the scores assigned to reserve officers by the ROSB were destroyed. Plaintiff's separation was effective on June 27, 1975, upon which he enlisted and served until completing twenty years of qualifying active service for retirement, and retired at the grade of major.

In June 1974, plaintiff received an adverse officer efficiency report (OER) for the period July 16, 1973 through June 26, 1974. The adverse OER was part of plaintiff's record at the time the ROSB reviewed plaintiff's record and decided to release him, among others, from active duty. On June 3, 1975, about three weeks before plaintiff was released, plaintiff applied to the Officer Personnel Records Review Board (OPRRB) for a correction of the adverse OER. The application was denied on July 11, 1975. In July 1977, two years later, plaintiff again sought removal of the OER from his record, in addition to reinstatement to active duty, in an application

to the AFBCMR.* In November 1979, the AFBCMR removed the OER from plaintiff's record but declined to restore him to active duty as a commissioned officer. The Board stated in its record of proceedings concerning plaintiff's claim that "the likelihood is remote that the removal of a single OER would change [plaintiff's ROSB score and rating] so much that he would have been retained on active duty," and recommended only partial relief in the form of voiding the OER. Defendant's Appendix at 13–14. After the adverse OER was expunged, the AFBCMR independently assessed plaintiff's record as it would have appeared to the ROSB, without the OER. As its rationale for refusing to reinstate plaintiff, the Board concluded that the release would have occurred had the OER not been part of plaintiff's record, as plaintiff's "overall record was not competitive enough to avoid being selected out by the ROSB." Defendant's Appendix at 44.

After the AFBCMR refused to reinstate plaintiff, he filed this action on January 24, 1980, asserting that the Board's decision was arbitrary and capricious and should be overturned. Plaintiff seeks reinstatement, back pay and other relief the court should find appropriate. Defendant has moved for summary judgment on the grounds that plaintiff's claim is barred by the doctrine of laches and that the AFBCMR decision should stand because it is not arbitrary, capricious, unsupported by substantial evidence or contrary to law. Plaintiff, opposing defendant's motion and cross-moving for summary judgment, contends that laches does not apply in this case and that the Board's decision was arbitrary, capricious and unsupported by substantial evidence, and therefore plaintiff should be awarded the relief sought from this court.

## DISCUSSION

### Doctrine of Laches

Defendant contends that plaintiff's unjustified delay from June 1974, when the adverse OER was issued, until January

---

* Plaintiff's application was made pursuant to 10 U.S.C. § 1552 and occurred within the three- year time limit for correction of military records set forth in Air Force Regulation 31–3.

1980, when this action was filed, and the resulting prejudice to defendant, warrant applying the doctrine of laches to defeat this action. Defendant asserts that plaintiff's obligation to pursue his claim arose when the adverse personnel action occurred and in support cites *Adkins v. United States*, 228 Ct.Cl. 909, 911 (1981) (per curiam). As a result of this inexcusable five-year and six-month delay, defendant alleges it will suffer monetary prejudice if it is potentially liable for services that plaintiff did not render, and the further inability to reconstruct plaintiff's record with the destroyed ROSB ratings will cause prejudice to defendant as well. Plaintiff in opposition denies unreasonable delay in seeking administrative relief and states that in fact forty-two percent of the delay was due to the government's failure to issue its administrative decision. *See Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979). Moreover, plaintiff advances the argument that although he did not perform the services for which he seeks compensation, he was available and capable of serving, and it was not through his fault that he was not engaged in active duty. Plaintiff thus refutes defendant's claim of prejudice, and asserts without supporting citations that "governmental liability to pay for services it neither required nor received over a period of time has never been a valid ground for denial by the BCMR of a meritorious case." *See* Plaintiff's Brief at 9. For the following reasons, we agree with defendant and find this action is barred by laches.

■ Laches is a "fairness" doctrine that may be employed to deny relief to one who has unreasonably and inexcusably delayed in asserting a claim where the delay results in injury or prejudice to the adverse party. *See Brundage v. United States*, 205 Ct.Cl. 502, 505, 504 F.2d 1382, 1384 (1974), *cert. denied*, 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975). Advanced as an affirmative defense, laches requires a showing of two elements: inexcusable delay in filing suit and resulting prejudice to the defendant. *See Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961); *Carrasco v. United States*, 215 Ct.Cl. 19, 29 (1977); *Foster v. United States*, 3 Cl.Ct. 440, 442 (1983), *aff'd*, 733 F.2d 88 (Fed.Cir.1984).

■ The first element, inexcusable delay, is considered apart from and without regard to the statute of limitations, *see Brundage*, 205 Ct.Cl. at 506, 504 F.2d at 1384, because "implicit within the statutory period" is a more limited period in which laches may be applied if unreasonable delay results in prejudice to defendant. *Shafer v. United States*, 1 Cl.Ct. 437, 438 (1983). Further, plaintiff may be charged with inexcusable delay from the time he was *notified* of the claim, although the claim had not yet accrued. *See Adkins v. United States*, 228 Ct.Cl. at 911. Therefore, in pursuing administrative remedies that are available before a claim accrues on discharge, plaintiff must not delay longer than necessary to avoid the bar of laches. *Gentry v. United States*, 225 Ct.Cl. 654, 656, 650 F.2d 290 (1980); *see also Fleming v. United States*, 2 Cl.Ct. 111, 115 (1983) (laches bars claim when delay occurred between issuance of OER and commencement of litigation); *Erickson v. United States*, 1 Cl.Ct. 163, 165–66 (1983) (claim barred by laches when administrative remedies not initiated until seven years after OER issued). Regarding the time lapse that justifies an application of laches, claims have been barred from litigation on the merits for delays ranging from eleven months, *see Norris v. United States*, 257 U.S. 77, 80–81, 42 S.Ct. 9, 10–11, 66 L.Ed. 136 (1921), to three and more years, *see Beeny v. United States*, 218 Ct.Cl. 672, 673, 590 F.2d 343 (1978); *Bell v. United States*, 207 Ct.Cl. 1021, 1021 (1975); *Brundage*, 205 Ct.Cl. at 508, 504 F.2d at 1385; *Alpert v. United States*, 161 Ct.Cl. 810, 820–21 (1963) (citations omitted).

■ The second element of a laches defense is prejudice to defendant as a result of the inexcusable delay. Although the burden of proving prejudice is borne by defendant, courts have reasoned that the longer plaintiff delays in seeking relief, the lesser is defendant's need to show specific prejudice and the greater is plaintiff's bur-

den to prove lack of prejudice. *See Deering v. United States,* 223 Ct.Cl. 342, 350, 620 F.2d 242, 246 (1980); *Brundage,* 205 Ct.Cl. at 509, 504 F.2d at 1386. The quantum of prejudice that has resulted from inexcusable delay may be assessed by considering the amount of back pay and allowances claimed by plaintiff, *see Pepper v. United States,* 8 Cl.Ct. 666, 676 (1985) *aff'd,* 794 F.2d 1571 (1986); *Foster,* 3 Cl.Ct. at 446. Prejudice results when individuals involved in measuring performance are asked to recall evaluations rendered years earlier. *See Pepper,* 8 Cl.Ct. at 677 (equity contemplates fresh memories and available evidence); *Brundage,* 205 Ct.Cl. at 511–12, 504 F.2d at 1387–88 (manifestly unfair and disruptive to require explanations and justifications of actions taken years earlier).

Applying these legal principles to the facts of the instant case, we must consider first whether plaintiff's delay was excusable, and, if not, is defendant prejudiced as a result of the delay, and thus in fairness, should plaintiff's claim should be barred by laches.

As to inexcusable delay, counting from the date plaintiff received the OER and was notified of the claim in June 1974, we find that plaintiff was not diligent in pursuing his administrative remedies nor in ultimately bringing his claim here. A year after the OER was issued, and three weeks before discharge (upon which his claim accrued), plaintiff first applied for administrative relief, which was denied. Plaintiff then waited two years before taking further action, in either appealing to this court or in seeking administrative remedies within the military sector. The court acknowledges, as plaintiff points out, that a portion of the time lapse can be attributed to delays inherent in the administrative process, specifically, the Board's two-year delay in passing on plaintiff's claim. *See Gruca v. United States Steel Corp.,* 495 F.2d 1252, 1259 (3d Cir.1974) (delay may be excusable when defendant has contributed to delay). Plaintiff, however, has profferred no reasonable excuse for his delays, and therefore the court finds the first element of a laches defense satisfied. Further, defend-

ant has been prejudiced since the ROSB ratings are no longer available, although an administrative record of the proceedings before the Board is extant. Nor are we persuaded by plaintiff's argument that defendant would not be prejudiced if required to remit backpay and allowances for over five years of services it did not receive or need. Plaintiff misstates the law when he asserts that this type of prejudice is not grounds for denying a meritorious case. To the contrary, this court has found these types of expenditures prejudicial to the government in many instances. *See, e.g., Deering,* 223 Ct.Cl. at 350, 620 F.2d at 246 (prejudice results when government liable to pay for unrendered services it did not need or want); *Brundage,* 205 Ct.Cl. at 510, 504 F.2d at 1387 (prejudice manifestly results when government pays for services not received) (citations omitted); *Pepper,* 8 Cl.Ct. at 676–77; *Jones v. United States,* 6 Cl.Ct. 531, 534 (1984). Accordingly, we find both elements of the laches defense present, and hold that plaintiff's claim is thereby barred. Although it is unnecessary to discuss the second issue raised herein, we turn briefly to the question of whether the Board's decision would withstand scrutiny on review.

*Judicial Review of the AFBCMR Decision*

Plaintiff contends that the Board's decision to void the adverse OER but not to reinstate plaintiff with the accompanying benefits was arbitrary and capricious because the ROSB records were not available to the Board on review and therefore a well-founded decision could not have been reached. Further, plaintiff faults the relief in that voiding the OER without awarding backpay and reinstatement is merely a "half-a-loaf" relief and thus inadequate. *See DeBow v. United States,* 193 Ct.Cl. 499, 434 F.2d 1333 (1970), *cert. denied,* 404 U.S. 846, 92 S.Ct. 150, 30 L.Ed.2d 84 (1971). Defendant in opposition asserts that substantial evidence supports the AFBCMR's determination that only harmless error occurred when the ROSB considered the adverse OER in plaintiff's record when deciding to release plaintiff from duty. In support, defendant cites the Board's statement

that even without the adverse OER, plaintiff's record was not adequate to survive manpower reductions. In essence, defendant avers that plaintiff has not established a nexus between the adverse OER and the release from reserve duty. *See Hary v. United States*, 223 Ct.Cl. 10, 20, 618 F.2d 704, 709 (1980); *Horn v. United States*, 223 Ct.Cl. 667, 668, 650 F.2d 286 (1980). We agree.

■ As a preliminary matter, we note that the standard this court applies in reviewing military Board decisions has been firmly established. In *Heisig v. United States*, 719 F.2d 1153 (Fed.Cir.1983), the Federal Circuit applied the "substantial evidence" rule in reviewing an ABCMR decision, describing the question on review as "whether the administrative action complained of is procedurally fair or supported by substantial evidence." *Id.* at 1156 n. 12 (quoting Steadman, Schwartz, & Jacoby, Litigation with the Federal Government § 8.119, ALI–ABA (2d ed. 1983)). The review jurisdiction has been summarized in the Court of Claims and Federal Circuit case law, both binding precedent upon this court, as follows:

> [R]eview of the administrative decision is limited to determining whether the [Board] action was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced.

*Heisig*, 719 F.2d at 1156; *Clayton v. United States*, 225 Ct.Cl. 593, 595 (1980); *Sanders v. United States*, 219 Ct.Cl. 285, 298, 594 F.2d 804, 813 (1979); *Skinner v. United States*, 219 Ct.Cl. 322, 329, 594 F.2d 824, 829 (1979). The evidence proffered to show a decision is arbitrary or unsupported must be clear and convincing. *See Finn v. United States*, 212 Ct.Cl. 353, 356, 548 F.2d 340, 342 (1977).

■ Applying this standard of review to the case before us, we cannot say that the Board's action in refusing to reinstate plaintiff was arbitrary, capricious, or unsupported by substantial evidence. The ROSB clearly acted within its authority to release reserve officers from active duty pursuant to 10 U.S.C. § 681(a) (1982), in an effort to eliminate surplus manpower. Moreover, plaintiff has failed to prove that his nonselection for promotion was a result of the adverse OER as required by *Hary*. In *Hary*, the court held on similar facts that merely because a correction board voids an OER, it need not automatically void a passover for promotion, or in this case, a release from active duty. *Hary*, 223 Ct.Cl. at 20, 618 F.2d at 709. Rather, the inquiry should focus on two issues: first, was there a material error committed in rendering the OER, and second, is there an adequate nexus between the error and the release from active duty. *Id.* at 15, 618 F.2d at 706 (citations omitted). Regardless of any error in the OER or any prejudice that may have resulted when the ROSB considered plaintiff's record, plaintiff has failed to establish the nexus. The Board unequivocally adopted the view that plaintiff's record was not competitive enough to avoid being released from duty by the ROSB, even if the adverse OER had been stricken from plaintiff's record. *See* Defendant's Appendix at 44. Therefore, in light of our limited scope of review, the substantial evidence in the administrative record and the procedural adequacy of proceedings, the court would uphold the relief that the Board granted plaintiff. Even assuming *arguendo* that we found plaintiff's remedy inadequate as the "half-a-loaf" type, it is not within our province to promote or reinstate military personnel. *See Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842, *reh'g denied*, 345 U.S. 931, 73 S.Ct. 779, 97 L.Ed. 1360 (1953); *Brenner v. United States*, 202 Ct.Cl. 678, 686, *cert. denied*, 419 U.S. 831, 95 S.Ct. 54, 42 L.Ed.2d 56 (1973). Nor is it our responsibility to determine the fitness of service personnel for duty. *See Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 2445, 37 L.Ed.2d 407 (1973). Our refusal to reinstate plaintiff is dictated by a policy of judicial deference to military affairs, often called the "hands-off" policy, as well as by the other considerations stated herein.

## CONCLUSION

For the reasons stated above, the court concludes on the basis of the briefs and accompanying papers submitted that there is no genuine issue as to any material fact essential to the disposition of this case, and defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment and opposition to summary judgment is denied. The clerk is directed to dismiss the action. No costs.

IT IS SO ORDERED.